# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Anker Innovations Technology Co., Ltd.;
Shenzhen Oceanwing Smart Innovations
Technology Co., Ltd.; Anker Innovations
Limited; and Fantasia Trading LLC;

        *Plaintiffs*,

v.

Beijing Seven Talents Technology Co., Ltd.;
AOSU Life Pte. Ltd. (Singapore); Shenzhen
Zhiling Technology Co., Ltd.; Guangzhou
Chaoyan Technology Co., Ltd.; and Hong
Kong Glazero International Trade Co.,
Limited;

        *Defendants*.

Case No. 1:25-cv-15663

**JURY TRIAL DEMANDED**

Hon. Sharon Johnson Coleman

## DEFENDANTS' MOTION TO RECONSIDER ORDER PERMITTING JURISDICTIONAL DISCOVERY AND TO STAY SUCH DISCOVERY

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Defendants Beijing Seven Talents Technology Co., Ltd.; AOSU Life Pte. Ltd. (Singapore); Shenzhen Zhiling Technology Co., Ltd.; Guangzhou Chaoyan Technology Co., Ltd.; and Hong Kong Glazero International Trade Co., Limited (collectively, "Defendants"), by and through undersigned counsel, respectfully move the Court to reconsider its prior order providing that discovery would be stayed "pending ruling on the motion to dismiss but will proceed on the jurisdictional issues." *See* Dkt. 24. Defendants respectfully request that the Court amend that order and stay all discovery, including jurisdictional discovery, pending resolution of Defendants' motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

On December 19, 2025, Guangzhou Chaoyan Technology Co., Ltd. filed a declaratory judgment action against Anker Innovations Limited in the United States District Court for the Western District of Washington ("WDWA"), alleging that Anker's "HOMEBASE" trademark is invalid and not infringed. *Guangzhou Chaoyan Tech. Co., Ltd. v. Anker Innovations Ltd.*, No. 2:25-cv-02635, Dkt. 1 ¶¶ 20-40 (W.D. Wash., 2025). Guangzhou Chaoyan Technology Co., Ltd. further alleges that Anker improperly invoked Amazon's trademark enforcement system to delist AOSU products sold on Amazon.com, thereby committing tortious interference with business relationships and unfair competition. *Id.* ¶¶ 41-58.

Five days later, after becoming aware of the WDWA action, Plaintiffs filed this action in the United States District Court for the Northern District of Illinois against Defendants, including Chaoyan Technology Co., Ltd., asserting claims for patent infringement as well as trademark claims that overlap with those asserted in the WDWA action. *See* Dkt. 1 ¶¶ 89–125.

Prior to the deadline for submitting the parties' Joint Status Report in this action, Defendants raised concerns regarding the absence of a *prima facie* basis for personal jurisdiction

in the Complaint and noted that discovery is not appropriate where such a showing has not been made. *See* Exhibit 1 at 8. Defendants further explained that the Complaint fails to provide any competent evidence establishing personal jurisdiction over any of the Defendants. *Id*. at 6. Plaintiffs did not address Defendants' concerns regarding personal jurisdiction. Instead, Plaintiffs continued to press for discovery without identifying any evidence supporting the existence of personal jurisdiction. *Id*. at 3–5. Defendants reiterated that discovery should not proceed until the threshold jurisdictional issues were resolved. *Id*. at 1.

Following the Initial Status Conference, Defendants again requested that Plaintiffs provide "evidence showing jurisdiction over the defendants" so that the parties could address the jurisdictional issues without unnecessarily burdening the Court. *See* Exhibit 2 at 3. Plaintiffs declined to provide such evidence and instead conditioned the production of jurisdictional materials on Defendants' agreement to unrelated requests, including providing full responses to discovery within twenty-one days and accepting service by email. *Id*. at 2. Plaintiffs stated that they would be willing to provide the jurisdictional materials only if Defendants agreed to those additional conditions. *Id*.

As a result, Plaintiffs have not produced any evidence demonstrating the existence of personal jurisdiction over any Defendant. Instead, Plaintiffs continue to rely on generalized allegations while seeking discovery that would impose substantial burdens on Defendants, all of whom are foreign entities located outside the United States.

## II.    LEGAL STANDARDS

A district court has inherent authority to reconsider and modify its interlocutory orders prior to the entry of final judgment. *See* Fed. R. Civ. P. 54(b); *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). Federal Rule of Civil Procedure 54(b) provides that courts retain broad

discretion to revise non-final orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id*. Reconsideration is appropriate where necessary to correct manifest errors of law or fact, account for newly presented evidence, or prevent manifest injustice. *Caisse Nationale de Crédit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996).

Federal Rule of Civil Procedure 26(c) further authorizes courts to issue protective orders, including orders staying discovery, for good cause shown. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) ("Rule 26(b)(2) of the Federal Rules of Civil Procedure empowers district courts to limit the scope of discovery if "the discovery sought is unreasonably cumulative or duplicative…"); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646–47 (7th Cir.2001) (holding that district courts have broad discretion in matters relating to discovery). In determining whether to grant a stay of discovery, this Court has considered the following factors: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Witz v. Great Lakes Educ. Loan Servs., Inc.*, No. 19-CV-06715, 2020 WL 8254382, at *1 (N.D. Ill., 2020) (quoting *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009)).

## III.    ARGUMENT

### A.    Jurisdictional Discovery Is Not Warranted Because Plaintiffs Have Failed to Make a *Prima Facie* Showing of Personal Jurisdiction

In the Court's February 24, 2026 Minute Entry, the Court acknowledged the seriousness of the personal jurisdiction issues raised in the Complaint and ordered that "[d]iscovery is stayed pending ruling on the motion to dismiss but will proceed on the jurisdictional issues." *See* Dkt. 24. Respectfully, however, jurisdictional discovery likewise is not warranted because Plaintiffs have

failed to make a *prima facie* showing of personal jurisdiction.

"A plaintiff does not have an automatic right to jurisdictional discovery in every case." *Marks v. Worldwide Robotic Automated Parking, LLC*, No. 16-CV-8656, 2017 WL 2985757, at *3 (N.D. Ill. July 13, 2017). Before jurisdictional discovery is permitted, the plaintiff must establish "a colorable or prima facie showing of personal jurisdiction." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (internal citations omitted). Moreover, the Seventh Circuit upheld that "foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1026 (7th Cir. 2009).

Plaintiffs are not entitled to jurisdictional discovery or any discovery, as they have failed to establish a *prima facie* case for personal jurisdiction. In *Tee Turtle*, Judge Coleman emphasized that generalized allegations that defendants sold products to Illinois customers are insufficient to establish a prima facie showing of personal jurisdiction. *Tee Turtle LLC v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A*, No. 25 CV 02910, 2025 WL 2880218, at *2 (N.D. Ill. Oct. 9, 2025). Specifically, Judge Coleman explained:

> "Plaintiffs claim that Defendants "were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Illinois, in this Judicial District, through accounts ... on e-commerce sites ..." (Id. ¶ 17). However, Plaintiffs only attach screenshots of the purchase page of each of Defendants' online marketplace webpages. (Dkt. 17). The screenshots only show an Illinois address. (Id.) There is no confirmation of purchase or shipment. (Id.) What's more, Plaintiffs provide no evidence, whether in the form of a declaration/affidavit or through additional screenshots, of the actual sale of the infringing products, written confirmation of sales with an Illinois shipping address, or shipping confirmation to an Illinois address … Without more, this information alone is insufficient to allow confer specific personal jurisdiction over Defendants."

*Id.*

The circumstances here are materially indistinguishable. Plaintiffs merely allege, in vague and conclusory fashion, that "Defendants … target sales of infringing products to Illinois customers, sell and have sold infringing goods to Illinois customers, offer shipping of infringing products to consumers in the United States (including in Illinois) …" *See* Dkt. 1 ¶ 13. These allegations are unsupported by any specific factual assertions demonstrating that any Defendant operated an online store that actually sold accused products to customers in Illinois. Nor are these allegations supported by any declaration or affidavit made under oath. Moreover, Plaintiffs' counsel has declined to produce any evidence demonstrating an actual shipment of the accused products to Illinois despite correspondence with Defendants requesting such proof. *See* Exhibit 1; Exhibit 2. Thus, as in *Tee Turtle*, Plaintiffs rely solely on speculative allegations rather than competent evidence.

By contrast, several Defendants have determined to submit sworn declarations expressly negating any sales, marketing, distribution, or importation activities directed toward the United States. Where defendants provide competent evidence refuting jurisdiction and plaintiffs offer nothing beyond speculation and collective pleading, jurisdictional discovery is not warranted. The law does not permit discovery as a fishing expedition in the hope of uncovering jurisdictional facts that were never plausibly alleged in the first place.

Accordingly, jurisdictional discovery or any discovery is unwarranted and granting it under these circumstances would contravene well-established legal principles. *See Medline Indus., Inc. v. Diversey, Inc.*, No. 20 C 4424, 2020 WL 5763637, at *4-5 (N.D. Ill. 2020) (granting motion to dismiss for lack of personal, denying jurisdictional discovery, and upholding that "when a lack of personal jurisdiction is clear, jurisdictional discovery would serve no purpose and should not be permitted"); *Rawlins v. Special Select Hosp. of Nw. Indiana, Inc.*, No. 13 C 7557, 2014 WL

1647182, at *5-6 (N.D. Ill. 2014) (holding that no *prima facie* showing of personal jurisdiction was made for purpose of jurisdictional discovery where court was granting the motion to dismiss); *Ticketreserve*, *supra*, 656 F. Supp. 2d at 782-83 (granting motion to dismiss for lack of personal jurisdiction, and denying jurisdictional discovery where plaintiff could not make *prima facie* showing of jurisdiction); *Brown v. Swagway*, No. 15-cv-588-JVB-CAN, 2016 WL 10749147, at *2 (N.D. Ind. 2016) (denying motion for jurisdictional discovery where court concluded that based on the pleading and an unrefuted affidavit from the party contesting personal jurisdiction, the plaintiff had not established a *prima facie* case justifying personal jurisdiction.).

Here, jurisdictional discovery should be considered, if at all, only after Defendants have filed a motion to dismiss for lack of personal jurisdiction and the Court has evaluated whether Plaintiffs have made a sufficient showing to justify such discovery. Granting jurisdictional discovery before Defendants have filed their Rule 12(b)(2) motion prevents the Court from assessing both the strength of Defendants' jurisdictional challenge and the evidentiary deficiencies in the Complaint. In *Unicolors*, this Court denied the plaintiff's request to commence jurisdictional discovery following the defendant's motion to dismiss, holding that the request "must be, and is, denied because [Plaintiff] has not made out a *prima facie* showing of personal jurisdiction over [Defendant]." *Unicolors, Inc. v. Shewin Flagship Shops*, No. 1:24-CV-2987, 2024 WL 4567268, at *9 (N.D. Ill. Oct. 24, 2024); *see also HS Wholesale Ltd. v. HS Glob. Distrib., LLC*, 2024 WL 774910, at *5 (N.D. Ill. Feb. 26, 2024).

Accordingly, permitting jurisdictional discovery at this stage—before the Court has had the opportunity to evaluate Defendants' forthcoming Rule 12(b)(2) motion and supporting evidence—would be inconsistent with the established practice in this District.

**B.** **The Court Should Stay Jurisdictional Discovery Pending Resolution of Defendants' Rule 12(b)(2) Motion**

In determining whether to grant a stay of discovery, courts in this District consider: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (ii) whether a stay will simplify the issues in question and streamline the trial; and (iii) whether a stay will reduce the burden of litigation on the parties and the court." *Witz*, No. 19-cv-06715, 2020 WL 8254382, at *1. Each of these factors weighs strongly in favor of staying jurisdictional discovery here.

First, a stay will not unduly prejudice or tactically disadvantage Plaintiffs. Plaintiffs bear the burden of establishing a prima facie basis for personal jurisdiction. Where plaintiffs fail to make that showing, dismissal without prejudice—rather than subjecting foreign defendants to costly discovery—is the appropriate outcome. The Seventh Circuit has cautioned that foreign defendants should not be haled into extensive discovery merely to determine whether personal jurisdiction exists. *GCIU-Emp.*, 565 F.3d at 1026. Here, Plaintiffs have not produced any competent evidence demonstrating that Defendants purposefully directed activities toward Illinois.

Moreover, Plaintiffs have an alternative forum in which to pursue their claims. Guangzhou Chaoyan Technology Co., Ltd. filed a declaratory judgment action against Anker Innovations Limited in the WDWA prior to the filing of this action. If Plaintiffs truly believe, as stated in the parties' Joint Status Report, that Defendants "collaboratively market the allegedly infringing products in the United States, including through Amazon.com, Walmart.com, Aosulife.com, and other outlets," Dkt. 23 at 3, Plaintiffs may assert those claims as counterclaims in the WDWA action and join the relevant parties there. Alternatively, if Plaintiffs later obtain evidence establishing a *prima facie* basis for personal jurisdiction in this District, they remain free to refile their claims here following dismissal without prejudice. Accordingly, staying jurisdictional discovery will not deprive Plaintiffs of any meaningful opportunity to litigate their claims.

Second, staying jurisdictional discovery will simplify the issues and streamline the litigation. Because Plaintiffs have not presented a *prima facie* basis for personal jurisdiction, discovery directed to jurisdictional issues is unnecessary. Resolving Defendants' Rule 12(b)(2) motion first will clarify whether this Court may exercise jurisdiction at all. If the Court determines that personal jurisdiction is lacking, the case will be dismissed without prejudice, thereby eliminating the need for jurisdictional discovery altogether. Moreover, Plaintiffs' own correspondence indicates that they already possess the purported evidence supporting personal jurisdiction. *See* Ex. 2 at 3. If that is the case, jurisdictional discovery is unnecessary. Plaintiffs' decision to condition the production of such evidence on Defendants' agreement to unrelated procedural requests further demonstrates that jurisdictional discovery is not required to establish personal jurisdiction. Plaintiffs either possess evidence sufficient to support their jurisdictional allegations, in which case they should present it to the Court, or they do not. If the latter is true, Plaintiffs have failed to satisfy the *prima facie* showing necessary to subject foreign defendants to jurisdictional discovery.

Third, a stay will significantly reduce the burden of litigation on both the parties and the Court. Defendants are foreign entities located outside the United States, and jurisdictional discovery would require substantial coordination across multiple foreign jurisdictions. Allowing such discovery before the Court has evaluated Defendants' jurisdictional challenge would impose unnecessary and disproportionate costs on Defendants and consume judicial resources resolving discovery disputes that may ultimately prove irrelevant. Staying discovery until the Court resolves Defendants' Rule 12(b)(2) motion therefore promotes efficiency and fairness.

For these reasons, the *Witz* factors strongly favor staying jurisdictional discovery pending resolution of Defendants' motion to dismiss for lack of personal jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reconsider and amend its February 24, 2026 Minute Entry (Dkt. 24) and stay all discovery, including jurisdictional discovery, pending resolution of Defendants' motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

March 5, 2026                                        Respectfully submitted,

**POTOMAC LAW GROUP, PLLC**

By: */s/ Brooke M. Rotstein*
        Brooke M. Rotstein
        1300 Pennsylvania Avenue, NW Suite
        500
        Washington, DC 20004
        Phone: (224) 300-0249
        Email: brotstein@potomaclaw.com

**YOUNGZEAL LLP**
Tianqin Zhao
9355 John W. Elliott Dr., Suite 25555
Frisco, Texas 75033
Phone: (585) 748-3732
Email: zhao@yzlaw.com

**ANJIE BROAD LAW FIRM**
Fan Liang (*pro hac vice forthcoming*)
Zhiyu Liang (*admitted pro hac vice*)
14th Floor, North Tower, Beijing Kerry
Centre
No. 1 Guanghua Road
Chaoyang District, Beijing 100020, China
Phone: +86 (10) 8567-5988
Email:   alex_liang@anjielaw.com
              liangzhiyu@anjielaw.com

*Attorneys for Defendants Beijing Seven*

*Talents Technology Co., Ltd.; AOSU Life Pte. Ltd. (Singapore); Shenzhen Zhiling Technology Co., Ltd.; Guangzhou Chaoyan Technology Co., Ltd. and Hong Kong Glazero International Trade Co., Limited*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 5, 2026, the foregoing Motion to Reconsider Order Permitting Jurisdictional Discovery and to Stay Such Discovery was filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the Court's Electronic Case Filing System, which will send notification to all attorneys of record in this case.

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

By: */s/  Brooke M. Rotstein*
Brooke M. Rotstein

# AUTHORITIES

Brown v. Swagway, LLC, Not Reported in Fed. Supp. (2016)

2016 WL 10749147

2016 WL 10749147
Only the Westlaw citation is currently available.
United States District Court, N.D.
Indiana, South Bend Division.

Michael BROWN, Plaintiff,

v.

SWAGWAY, LLC, et al., Defendants.

CAUSE NO. 3:15-cv-588-JVB-CAN
|
Signed 08/02/2016

**Attorneys and Law Firms**

Fran L. Rudich, PHV, Jeffrey A. Klafter, PHV, Michael H. Reed, PHV, Seth R. Lesser, PHV, Klafter Olsen & Lesser LLP, Rye Brook, NY, Hae Sung Nam, PHV, Joshua H. Saltzman, PHV, Richard J. Kilsheimer, Robert N. Kaplan, PHV, Kaplan Fox & Kilsheimer LLP, New York, NY, Richard E. Shevitz, Vess A. Miller, Irwin B. Levin, Cohen & Malad LLP, Indianapolis, IN, for Plaintiff.

Adam P. Hall, PHV, Frost Brown Todd LLC, Cincinnati, OH, Darren A. Craig, Nicholas C. Pappas, Frost Brown Todd LLC, Indianapolis, IN, for Defendants.

**ORDER**

Christopher A. Nuechterlein, United States Magistrate Judge

**\*1** On March 17, 2016, Plaintiff filed his Motion for Leave to Take Limited Discovery from Defendant Modell's Sporting Goods, Inc. ("Modell's") Relating to Personal Jurisdiction. On March 30, 2016, Modell's filed its response in opposition. Plaintiff's motion became ripe on April 11, 2016, when he filed his reply brief. The Court then held a telephonic hearing on Plaintiff's motion on July 29, 2016. For the reasons stated below, the Court now denies Plaintiff's motion.

**I. Relevant Background**

Plaintiff, a New York resident, filed his class action complaint on December 10, 2015, after purchasing a hoverboard that burst into flames while plugged in to be charged, ignited the packaging materials, and caused damages to his New York home. The hoverboard was manufactured by Defendant, Swagway, LLC, an Indiana limited liability company. Plaintiff purchased the Swagway hoverboard through the Modell's website. Modell's is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York. In his complaint, Plaintiff alleged breach of implied warranty, unlawful deceptive acts and practices under New York's and other states' consumer protection statutes, and unjust enrichment.

In response, both Swagway and Modell's have filed motions to dismiss that remain pending before the presiding judge. [Doc. No. 29 & 39]. Part of Modell's motion includes a request to dismiss the complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Almost three weeks after Modell's filed its motion to dismiss, Plaintiff filed the instant motion seeking discovery under Fed. R. Civ. P. 26(d)(1) to "uncover facts relevant to the issue of personal jurisdiction and to meet the factual averments of Modell's." Doc. No. 45 at 2.

Before this Court could rule on the instant motion, Plaintiff filed his consolidated response to both the Modell's and Swagway motions to dismiss. Plaintiff's brief references the instant motion for discovery and reiterates its analysis, but also argues that a *prima facie* case for general and specific personal jurisdiction exists over Modell's in Indiana even without discovery. In support, Plaintiff cites the following facts: (1) the Modell's retail website ships products, including Swagway hoverboards, to all 50 states and includes the State of Indiana in the shipping state dropdown menu; (2) Modell's sold products to consumers in Indiana in 2015 totaling an estimated $1.75 million in sales annually; (3) Modell's sells products on its website with logos of Indiana professional and college sports teams; (4) the Modell's website appears in the second page of Google search results for "Indiana Pacers gear;" and (5) Modell's has done continuous business with Swagway, an Indiana company.

**II. Analysis**

As a preliminary matter, the procedural posture of this case suggests that the question of whether Plaintiff should be allowed to conduct discovery on the issue of personal jurisdiction over Modell's should be resolved by the presiding judge when he addresses Modell's pending motion to dismiss. Indeed, Plaintiff could have sought an extension of time to respond to Modell's motion to dismiss until the undersigned could rule on the pending motion for discovery. Plaintiff did not. Instead, Plaintiff briefed the motion to dismiss in full and included arguments suggesting that the Court would be within

Brown v. Swagway, LLC, Not Reported in Fed. Supp. (2016)

2016 WL 10749147

its authority to find personal jurisdiction over Modell's with the facts available without any discovery.

**\*2** Moreover, jurisdiction is a threshold matter that must be resolved before the Court has authority to address any other matters in this and every case before it. Therefore, because Plaintiff has teed up Modell's motion to dismiss for lack of personal jurisdiction with his consolidated response brief, the undersigned is hesitant to address the instant motion for discovery. Nevertheless, the undersigned is also persuaded that Plaintiff has not met his burden to justify jurisdictional discovery.

"As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction." *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 241 (N.D. Ind. 1998) (internal quotation and citation omitted). However, "a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case." *Id.* To obtain jurisdictional discovery, "[a] plaintiff must make a threshold or prima facie showing with some competent evidence demonstrating that personal jurisdiction *might* exist over a defendant in order to be entitled to jurisdictional discovery." *Id.*; *see also Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000).

"For example, a plaintiff is entitled to jurisdictional discovery if he or she can show that the factual record is at least ambiguous or unclear on the jurisdiction issue." *Andersen*, 179 F.R.D. at 241. But jurisdictional discovery should be denied where a plaintiff's motion is based on bare, attenuated, or unsupported assertions of personal jurisdiction, or "where the defendant has provided affirmative evidence that refutes the plaintiff's assertion of jurisdiction." *Sullivan v. Sony Music Entm't*, No. 14 CV 731, 2014 WL 5473142, at \*5 (N.D. Ill. Oct. 29, 2014) (citation omitted); *see also Andersen*, 179 F.R.D. at 242. Jurisdictional discovery should also be denied where the pleadings contain no specific facts to establish the requisite contacts with the jurisdiction. *See Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983)).

At the heart of the question here is whether the Modell's activity through its retail website constitutes "minimum contacts" with the State of Indiana so as to confer jurisdiction over Modell's in Indiana. A court's exercise of jurisdiction over nonconsenting, out-of-state defendants is limited to those with "minimum contacts" with the forum state. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). A court has general jurisdiction over defendants whose activities in the state are so "continuous and systematic" as to "render them essentially at home in the forum State," or specific jurisdiction over defendants whose conduct directed at the forum state resulted in the claims alleged in the complaint. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919–22 (2011); *see also Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010).

Here, Plaintiff agrees that mere maintenance of a website, without more, may not be sufficient for the assertion of jurisdiction, but asserts that Modell's has demonstrated "continuous and systematic" contacts with Indiana beyond the mere existence of its website. *See Tamburo*, 601 F.3d at 701; *see also uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 426 (7th Cir. 2010). Plaintiff's arguments cannot overcome the reality that all of Plaintiff's experience with his purchase of a Swagway hoverboard from Modell's occurred in New York, not Indiana. In addition, Plaintiff's pleadings are devoid of any allegations that the putative class consists of a single Indiana resident who purchased a Swagway hoverboard from Modell's or as the result of Modell's advertisements directed to Indiana.

**\*3** Even Plaintiff's argument that Modell's targets Indiana consumers by selling Indiana sports gear is insufficient to establish a *prima facie* case that jurisdiction might exist as against Modell's because Plaintiff's complaint does not allege anything about how Modell's markets or advertises to any state, including Indiana. Plaintiff's bare, attenuated, and unsupported assertions of personal jurisdiction aside, Aarons's statement that Modell's does not advertise or target sales in Indiana has not been refuted with any allegations and must be accepted as true for purposes of determining the propriety of jurisdictional discovery. *See Zimmer, Inc. v. Elk & Elk*, No. 3:11-CV-63 RM, 2011 WL 5040704, at \*4 (N.D. Ind. Oct. 24, 2011) (citations omitted) ("Even though a Rule 12(b)(2) [lack of personal jurisdiction] analysis requires resolution of any conflicts in the pleadings and affidavits in [the plaintiff's] favor, the court must accept as true any facts contained in the defendant's affidavit that remain unrefuted by [the plaintiff].").

Similarly, Plaintiff's hypothesis that the contract between Modell's and Swagway is enough to establish jurisdiction does not jibe with the affidavit of Mark Aarons, Vice

**Brown v. Swagway, LLC, Not Reported in Fed. Supp. (2016)**

2016 WL 10749147

President and Deputy General Counsel for Modell's. Aarons identifies the contract that governs the business relationship between Swagway and Modell's, but also avers that Modell's (1) does not accept delivery of hoverboards in Indiana from Swagway; (2) did not attend any meetings related to the Swagway hoverboards in Indiana; (3) does not own, lease, or otherwise use any real estate in the Indiana; (4) does not maintain any bank accounts in Indiana; (5) does not operate any businesses or maintain any employees in Indiana; and (6) is not registered, certified, or licensed to do business in Indiana. Doc. No. 30-2 at 2. Plaintiff has not refuted these statements. Instead, Plaintiff seeks discovery on these same issues despite Aaron's declaration answering the relevant questions. The Court cannot ignore the Aaron's declaration as Plaintiff invites.

In sum, Plaintiff has not presented a *prima facie* case that jurisdiction might exist. Modell's website alone is not enough to convince the undersigned that jurisdictional discovery is warranted or necessary. Plaintiff has not overcome the Aarons declaration or sufficiently pled jurisdiction leaving the website as the only possible link to jurisdiction. That is not enough.

## III. Conclusion

For the reasons stated above, the undersigned finds that Plaintiff has not his burden to support his pursuit of jurisdictional discovery. Therefore, the Court **DENIES** Plaintiff's motion. [Doc. No. 45].

## SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2016 WL 10749147

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

HS Wholesale Limited v. HS Global Distribution, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 774910

2024 WL 774910
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

HS WHOLESALE LIMITED, Plaintiff,

v.

HS GLOBAL DISTRIBUTION,

LLC, Defendant.

No. 23 C 7942
|
Signed February 26, 2024

**Attorneys and Law Firms**

Madeline Remish, Michael A. Jacobson, Joseph Ming Kuo, Saul Ewing Arnstein & Lehr LLP, Chicago, IL, for Plaintiff.

Michael R. Turner, Lee Barrington Stark, Neal Gerber & Eisenberg LLP, Chicago, IL, for Defendant.

## OPINION AND ORDER

SARA L. ELLIS, United States District Judge

**\*1** After discovering that Defendant HS Global Distribution, LLC ("HS Global") operates under the name "H&S Wholesale" in the same e-cigarette market space as it, Plaintiff HS Wholesale Limited ("HS Wholesale") filed this lawsuit, alleging that HS Global infringes its trademarks under the Lanham Act, 15 U.S.C. § 1125(a), and Illinois common law. HS Global has filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Because HS Global does not have sufficient minimum contacts with Illinois, the Court lacks jurisdiction over HS Global and dismisses this case without prejudice.

## BACKGROUND[1]

HS Wholesale, an Illinois corporation, distributes and sells e-cigarettes and related products to retailers, convenience stores, gas stations, and smoke shops in Illinois, across the country, and internationally. Hammad Ahmad founded HS Wholesale and has served as its president since April 2015. HS Wholesale has used the mark "HS Wholesale"

since 2014. It has operated a website since 2016, found at hswsupply.com, through which it primarily sells its products. It filed a trademark application to register the "HS Wholesale" mark on August 9, 2023, specifying the category as online wholesale and retail store services featuring e-cigarettes and related products.

HS Global, a Tennessee limited liability company that operates under the name H&S Wholesale, also distributes e-cigarettes and related products to retailers. Brothers Haitham and Suhaib Asad own HS Global, with the initials in the company name taken from their first names. In February 2021, the Asad brothers formed HS Global, which operates out of a building in Jackson, Tennessee. HS Global does not have any clients in Illinois, does not market to anyone in Illinois, and has made no sales to persons or businesses in Illinois. HS Global does not market to individual consumers, but rather to retailers. Haitham represents that approximately 90% of its business comes from retail stores within a sixty-mile radius of Jackson, Tennessee, with Haitham knowing most of the retailers personally. HS Global makes approximately 50% of its sales in person at the Jackson location and 40% of its sales over the phone or in person at local retailers, with HS Global delivering the products in Jackson and its surrounding areas. HS Global ships the remaining 10% of orders mainly to retailers in Tennessee, eastern Arkansas, and southeast Missouri.

HS Global uses the domain name hsgwholesale.com, which redirects to hsgdistribution.com, a website accessible from anywhere, including Illinois. To buy products from HS Global through its website or otherwise, retailers must have an account. The form to request a wholesale account found on the website indicates that HS Global only serves Tennessee, Missouri, South Carolina, and Arkansas. Haitham reviews account requests and approves or rejects them. He represents that if an authorized retailer attempted to send an order to Illinois, HS Global would refuse the order.

**\*2** HS Wholesale notes that two of the product lines that HS Global offers for sale, Mr. Fog and Tyson, are made and sold by companies based in Illinois. Contrary to HS Wholesale's assumption that HS Global must purchase these products directly from distributors in Illinois, Haitham represents that HS Global purchases the Mr. Fog products from Safa Goods in Port Charlotte, Florida and the Tyson products from both Safa Goods and Ultimate Product Distributors in Hackensack, New Jersey. HS Global provides invoices showing its purchases of these products from these non-

HS Wholesale Limited v. HS Global Distribution, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 774910

Illinois distributors. According to Haitham, the Mr. Fog products account for less than 1% of HS Global's sales.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *Id.* at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff[ ] must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

## ANALYSIS

### I. Personal Jurisdiction

In federal question cases, the Court may exercise personal jurisdiction over a defendant only if "federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). The Lanham Act does not authorize nationwide service of process, and so the Court may exercise jurisdiction over HS Global only if authorized both by the United States Constitution and Illinois law. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014); *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013). Although theoretical differences may exist between the federal and Illinois constitutional standards, the Seventh Circuit has observed that "no Illinois case has provided a definitive explanation" of these differences. *Matlin*, 921 F.3d at 705. Moreover, both constitutional standards focus on whether exercising jurisdiction over a defendant is fair and reasonable. *See KM Enters.*, 725 F.3d at 732. Accordingly, a single inquiry into whether the United States Constitution permits jurisdiction suffices. *See, e.g.*, *Curry*, 949 F.3d at 393; *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010); *see also Wesly v. Nat'l Hemophilia Found.*, 2020 IL App (3d) 170569, ¶ 16 ("[I]t is generally true that, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns." (alteration in original) (citation omitted)).

**\*3** Jurisdiction is proper under the Due Process Clause of the United States Constitution if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). Personal jurisdiction comes in two forms: general and specific.[2] *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). HS Global argues that it is not subject to either general or specific jurisdiction in Illinois. The Court addresses each in turn.

### A. General Jurisdiction

General jurisdiction arises when the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Under this "demanding standard," a defendant is subject to general jurisdiction only where its contacts with the forum state are so "continuous and systematic" that it can be considered "at home" in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010); *see also Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) ("The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence.").

HS Wholesale Limited v. HS Global Distribution, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 774910

For corporate defendants, "the [Supreme] Court has identified only two places where [a corporation is essentially at home]: the state of the corporation's principal place of business and the state of its incorporation." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015) (citing *Daimler*, 571 U.S. at 137). Here, HS Global is a Tennessee corporation with its principal place of business there as well. This does not end the inquiry, as the Supreme Court left open the possibility that "in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citation omitted). Nothing suggests that this qualifies as an exceptional case, however, as the only evidence of HS Global having a connection to Illinois—the accessibility of HS Global's website to those present in Illinois—does not show that HS Global is "at home" in Illinois. *See Richter v. INSTAR Enters. Int'l, Inc.*, 594 F. Supp 2d 1000, 1007–09 (operation of fully interactive website selling products in Illinois not sufficient to confer general jurisdiction); *cf. BNSF*, 581 U.S. at 406, 414 (no general personal jurisdiction over company that had two thousand employees in the state in part because these employees represented less than five percent of the company's total work force); *uBID*, 623 F.3d at 424, 426 (no general jurisdiction despite a company's "extensive and deliberate" marketing contacts in the state because the company "ha[d] taken pains to limit its physical presence to Arizona" and the Illinois advertising was part of a nationwide campaign). Thus, HS Global is not subject to general jurisdiction in Illinois.

### B. Specific Jurisdiction

**\*4** Specific jurisdiction arises "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists*, 623 F.3d at 444; *see also Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) ("Specific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself."). For purposes of specific jurisdiction, "[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical*, 751 F.3d at 800–01. A defendant is not subject to jurisdiction solely because the plaintiff suffered injury in the forum state. *Id.* at 802. Instead, to establish specific jurisdiction over HS Global, HS Wholesale must show that "(1) [HS Global] purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to [HS

Global's] forum-related activities; and (3) any exercise of personal jurisdiction ... comport[s] with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021).

Here, HS Wholesale bases its claim of specific jurisdiction on HS Global's operation of an interactive website that allegedly allows for shipment to Illinois and its alleged sourcing of some of the products it sells from Illinois companies. HS Global has refuted HS Wholesale's speculative argument that HS Global obtains products from Illinois companies, so this alleged contact cannot support a finding of specific jurisdiction. This leaves only HS Global's operation of an interactive website as a possible contact with Illinois.

Courts are "careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state." *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) (quoting *Hemi*, 622 F.3d at 760); *see also Advanced Tactical*, 751 F.3d at 803 ("Having an interactive website ... should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible."); *Hemi*, 622 F.3d at 760 ("Premising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of virtually unlimited accessibility of websites across the country." (citing *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004))). Instead, HS Wholesale must show that, in addition to operating a website accessible in Illinois, HS Global "in some way *target[s]* the forum state's market." *be2 LLC*, 642 F.3d at 559. HS Wholesale contends that HS Global's website allows customers from any state, including Illinois, to create an account and purchase products, providing the required targeting. But unlike in *Curry*, where the defendant's website offered the forum state as a "ship-to" option, the defendant sent an email confirming orders and shipping addresses, and the defendant then sold and shipped products to over 700 forum residents, *Curry*, 949 F.3d at 399, here, HS Global's website makes clear that it only serves customers in Tennessee, Arkansas, Missouri, and South Carolina. And as Haitham explained, he must approve all requested accounts before interested retailers can make purchases. Additionally, he indicated that HS Global would refuse any orders made with an Illinois shipping address. In other words, HS Global has structured its activities to ensure that it does not target

HS Wholesale Limited v. HS Global Distribution, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 774910

the Illinois market. *See be2 LLC,* 642 F.3d at 559 (defendant did not expressly aim conduct at Illinois even though twenty Illinois residents had created profiles on defendant's website because no evidence existed that defendant "targeted the Illinois market" or interacted with the Illinois-based website members); *cf. NBA Props., Inc. v. HANWJH,* 46 F.4th 614, 624 (7th Cir. 2022) (court had jurisdiction where the defendant created an online website arranging for the sale and shipment of infringing products to Illinois and then fulfilled an order to an Illinois address); *Hemi,* 622 F.3d at 757–58 (personal jurisdiction existed where "Hemi stood ready and willing to do business with Illinois residents" because it "maintained commercial websites through which customers could purchase cigarettes, calculate their shipping charges using their zip codes, and create accounts" and it then made a sale to an Illinois customer). And because HS Global did not target Illinois, sufficient minimum contacts with this forum do not exist to support the exercise of jurisdiction over HS Global.

## II. Jurisdictional Discovery

**\*5** Because the Court finds it lacks personal jurisdiction over HS Global, it must address HS Wholesale's request for jurisdictional discovery. For a court to permit jurisdictional discovery, "[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 946 (7th Cir. 2000) (citation omitted); *Medline Indus., Inc. v. Diversey, Inc.,* No. 20 C 4424, 2020 WL 5763637, at \*4 (N.D. Ill. Sept. 28, 2020) (the plaintiff "must make a colorable showing of personal jurisdiction before discovery is allowed"). This requires a plaintiff to "show that the factual record is at least ambiguous or unclear on the jurisdiction issue." *Gilman Opco LLC v. Lanman Oil Co.,* No. 13-CV-7846, 2014 WL 1284499, at \*6 (N.D. Ill. Mar. 28, 2014) (citation omitted) (internal quotation marks omitted). As explained, HS Wholesale has not made a prima facie or colorable showing of jurisdiction, nor has it demonstrated an ambiguous factual record. Accordingly, the Court denies HS Wholesale's request for jurisdictional discovery. *See Medline Indus.,* 2020 WL 5763637, at \*4 ("[W]hen a lack of personal jurisdiction

is clear, jurisdictional discovery would serve no purpose and should not be permitted." (citing *John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC,* No. 16 C 5918, 2017 WL 1093150, at \*12 (N.D. Ill. Mar. 23, 2017))).

## III. Transfer

The Seventh Circuit has recently explained that "when federal courts find that they lack jurisdiction, they bear an independent obligation under § 1631 to consider whether to transfer the case." *North v. Ubiquity, Inc.,* 72 F.4th 221, 228 (7th Cir. 2023); *see also* 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court ... in which the action or appeal could have been brought at the time it was filed."). This obligation is "quite limited," however, and requires consideration of whether transfer of the case is "in the interest of justice." *North,* 72 F.4th at 228. A bar on refiling based on the statute of limitations amounts to a compelling reason to transfer a case. *Id.* (citing *Phillips v. Seiter,* 173 F.3d 609, 610 (7th Cir. 1999)). But where the statute of limitations would not bar refiling, the Court need not transfer the case pursuant to § 1631. *Id.* ("If a plaintiff may, on its own, refile its case in a proper forum, the interests of justice do not demand transfer." (quoting *Danziger v. De Llano,* 948 F.3d 124, 133 (3d Cir. 2020))). Here, the statute of limitations does not stand as a bar to refiling. Therefore, the Court does not find that the interests of justice require transfer under § 1631 and so dismisses the case without prejudice for lack of personal jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court grants HS Global's motion to dismiss [13]. The Court dismisses the case without prejudice for lack of personal jurisdiction and terminates this case.

## All Citations

Not Reported in Fed. Supp., 2024 WL 774910

## Footnotes

1    In addressing personal jurisdiction, the Court is not limited to the pleadings. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). Therefore, the Court draws the facts from the complaint and the

**HS Wholesale Limited v. HS Global Distribution, LLC, Not Reported in Fed. Supp. (2024)**

2024 WL 774910

additional documents submitted by the parties. The Court resolves all factual conflicts and draws all reasonable inferences in HS Wholesale's favor. *Id.* at 782–83.

2    The Supreme Court has recently emphasized that a third method of establishing personal jurisdiction exists where a defendant has consented to suit in the forum. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023). Because HS Wholesale does not argue that HS Global consented to suit in Illinois, the Court need not address the implications of *Mallory* further.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Marks v. Worldwide Robotic Automated Parking, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 2985757

KeyCite Yellow Flag

Distinguished by Deckers Outdoor Corporation v. Wolverine Group Pty Ltd., N.D.Ill., April 28, 2025

2017 WL 2985757
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

John MARKS, Plaintiff,

v.

WORLDWIDE ROBOTIC AUTOMATED
PARKING, LLC, Donald Jagoda,
and 5BY2 B.V., Defendants.

Case No. 16-cv-8656
|
Signed 07/13/2017

**Attorneys and Law Firms**

Maureen Elizabeth Schoaf, Lisa Mon'a Kpor, Elias N. Matsakis, Holland and Knight, LLP, Chicago, IL, for Plaintiff.

Gregory James Jordan, Mark R. Zito, Jordan & Zito LLC, Chicago, IL, Kathryn Susan Wood, Dickinson Wright PLLC, Troy, MI, Max Abram Aidenbaum, Dickinson Wright PLLC, Detroit, MI, for Defendants.

**MEMORANDUM OPINION AND ORDER**

Robert M. Dow, Jr., United States District Judge

*1 Plaintiff John Marks brings suit against Defendants 5BY2 B.V. ("5BY2"), Worldwide Robotic Automated Parking, LLC ("WRAP"), and Donald Jagoda alleging breach of contract, unjust enrichment, and tortious interference with prospective economic advantage. Currently before the Court is Plaintiff's motion to conduct jurisdictional discovery regarding the Court's personal jurisdiction over 5BY2 [43]. For the reasons set forth below, the Court denies Plaintiff's motion to conduct jurisdictional discovery [43]. Plaintiff is given until August 3, 2017 to file a response brief to Defendant 5BY2's motion to dismiss for lack of personal jurisdiction [19]; Defendant 5BY2 is given until August 17, 2017 to file a reply brief. The Court will issue a ruling by mail.

**I. Background**

At the center of this dispute is a sales agency agreement ("SAA") between Defendant 5BY2 and Defendant WRAP. 5BY2 is a Dutch company that manufactures automated parking systems, and WRAP is a Michigan company that is in the business of marketing such systems. In November 2014, 5BY2 and WRAP entered into a SAA whereby WRAP would serve as the exclusive sales agent of 5BY2 in the United States, Mexico, the Dominican Republic, and Puerto Rico for a five-year period. [1, at ¶¶ 1, 19.] In exchange for WRAP's services as sales agent, 5BY2 agreed to pay WRAP commissions on all products sold to customers resulting from orders procured by WRAP, as well as other commissions and referral fees. [*Id.* at ¶ 20.]

Plaintiff, a resident of Florida, contends that in November 2014, WRAP arranged for Plaintiff to meet with 5BY2 representatives in Chicago to discuss Plaintiff's potential financing of WRAP's promotion and marketing of 5BY2 parking systems under the SAA.[1] [*Id.*, at ¶ 2.] Plaintiff asserts that on January 2, 2015, Plaintiff, WRAP, and WRAP's principal, Defendant Donald Jagoda, entered into a Funding Agreement, a collateral assignment of contracts, and a promissory note and security agreement, by which Plaintiff would provide funding to WRAP and Jagoda to support WRAP's promotion and marketing of 5BY2's parking systems. [*Id.*, at ¶¶ 3, 24.] Plaintiff alleges that the Funding Agreement also provides that Plaintiff would receive royalty payments of 25% of the commission or other payments that WRAP and Jagoda received as a result of any sales under the SAA. [*Id.*, at ¶ 25.] Plaintiff asserts that as security for the Funding Agreement, WRAP and Jagoda provided Plaintiff with a $200,000 promissory note and a security agreement, pursuant to which WRAP collaterally assigned and conveyed to Plaintiff "all rights to payment under or related to the SAA." According to Plaintiff, the Funding Agreement was negotiated in part in this district and provides that this district shall be the forum for resolving controversies under the agreement. Plaintiff contends that the parties executed a separate Collateral Assignment of Contracts and Power of Attorney, dated January 2, 2015, confirming the assignment of rights under the SAA to Plaintiff. [*Id.*, at ¶ 29.] Plaintiff asserts that he made an initial advance of $15,400 to WRAP and Jagoda and provided monthly funding to WRAP and Jagoda pursuant to the Funding Agreement. [*Id.*, at ¶ 26.]

*2 Plaintiff contends that by April 2016, WRAP and Jagoda had defaulted on the $200,000 promissory note and Funding Agreement. [*Id.* at ¶ 32.] Plaintiff further contends that in breach of the Funding Agreement, WRAP and Jagoda failed

Marks v. Worldwide Robotic Automated Parking, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 2985757

to pay amounts due to Plaintiff, including royalty payments. [*Id.* at ¶ 33.] Plaintiff alleges upon information and belief that from November 2014 through April 2015, WRAP received commission payments from 5BY2 totaling approximately $133,970 pursuant to the SAA. [*Id.* at ¶ 32.] On April 4, 2016, Plaintiff sent a notice of default and demand for payment to WRAP and Jagoda and a letter to 5BY2 indicating that Plaintiff was a secured creditor of WRAP and that all further payments with respect to the SAA should be made to Plaintiff because of WRAP and Jagoda's default. [*Id.* at ¶¶ 35–36.]

Plaintiff alleges upon information and belief that during this same period of time, WRAP and 5BY2 were negotiating the terms of an agreement to end their relationship. [*Id.* at ¶ 37.] On April 7, 2016, WRAP and 5BY2 entered into an early termination agreement terminating the SAA ("the Termination Agreement"). Under the Termination Agreement, 5BY2 agreed to pay WRAP $450,000 over a period of approximately eight months. [*Id.* at ¶¶ 38–39.] Plaintiff contends that on April 11, 2016, 5BY2 paid WRAP $210,000 in accordance with the payment schedule set forth in the Termination Agreement, and the funds were deposited into an escrow account. [*Id.* at ¶ 40.] Plaintiff contends that he learned about the Termination Agreement shortly after it was executed. [*Id.* at ¶ 41.] Plaintiff asserts that on April 13, 2016, with the consent of WRAP, he again wrote to 5BY2 and advised that any monies owed to WRAP under the SAA or Termination Agreement should be preserved until the issues could be resolved. [*Id.* at ¶ 10, 42.]

In late April 2016, 5BY2 claimed that the SAA prohibited WRAP's Collateral Assignment of rights under the SAA to Plaintiff. 5BY2 claimed that upon WRAP's Collateral Assignment, the SAA became terminable at the option of 5BY2, and thus 5BY2 was terminating the SAA retroactively, effective January 2, 2015, the date of the Collateral Assignment to Plaintiff. [*Id.* at ¶ 43.] Plaintiff alleges that 5BY2 also claimed that WRAP fraudulently induced 5BY2 to enter into the Termination Agreement because WRAP had collaterally assigned its rights to Plaintiff and had not obtained Plaintiff's consent to enter into the Termination Agreement. 5BY2 allegedly asserted that had it known about the Collateral Agreement, it could have terminated the SAA without penalty or any other form of payment obligation. 5BY2 allegedly claimed that the Termination Agreement was therefore void. [*Id.* at ¶ 44.] Plaintiff alleges, however, that he gave his consent to enter into the Termination Agreement, that the Collateral Agreement was not a prohibited assignment under the SAA, and that nothing in the SAA allows a

party to retroactively terminate the agreement. Thus, in Plaintiff's view, 5BY2's retroactive termination of the SAA and its repudiation of its obligation under the Termination Agreement were improper. [*Id.* at ¶¶ 43, 45.] Plaintiff contends that 5BY2 is refusing to pay any further amounts it owes to WRAP under the Termination Agreement and is seeking through arbitration the $210,000 it paid to WRAP under the Termination Agreement, as well as the $133,970.44 in commission that it paid to WRAP under the SAA since January 2, 2015. [*Id.* at ¶ 46.]

Plaintiff contends that since WRAP and 5BY2 entered into the Termination Agreement, 5BY2 has benefited from numerous sales resulting from the sales leads that WRAP identified and developed from funds provided by Plaintiff. Plaintiff alleges upon information and belief that these sales total in excess of $2,000,000. [*Id.* at ¶ 47.] Plaintiff asserts that as of July 31, 2016, Plaintiff has advanced over $280,000 to WRAP and Jagoda for 5BY2 marketing activities and that only a portion of this funding has been repaid. [*Id.* at ¶ 49.]

**\*3** Plaintiff brought suit against Defendants WRAP, 5BY2, and Jagoda on September 2, 2016. In Count I (against all Defendants), Plaintiff seeks a declaration that the SAA was not terminable upon collateral assignment and that the Termination Agreement is not void. In Count II, Plaintiff brings a breach of funding agreement and promissory note claim against WRAP and Jagoda. In Count III, which is pled in the alternative to Count I, Plaintiff brings an unjust enrichment claim against 5BY2. In Count IV, Plaintiff asserts a tortious interference with prospective economic advantage claim against 5BY2.

5BY2 filed a 12(b)(2) motion to dismiss for lack of personal jurisdiction [19]. According to the declaration of Kamiel Koot, 5BY2's director and CEO, 5BY2 is incorporated in the Netherlands, has its principal place of business in the Netherlands, does not conduct corporate operations in Illinois, does not maintain an office in Illinois, does not own, hold, use, possess, or lease any real or personal property in Illinois, has no employees in Illinois, is not registered to do business in Illinois, does not sell products, advertise, or solicit business in Illinois, has never executed a contract in Illinois, is not party to any contract with an Illinois resident, and has never consummated a business transaction in Illinois. [19, Exhibit B, at ¶¶ 19–31.] Plaintiff filed a motion to conduct jurisdictional discovery [43], which is currently before the Court. Plaintiff argues that he has established a *prima facie* case of general jurisdiction such that the Court should grant

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Marks v. Worldwide Robotic Automated Parking, LLC, Not Reported in Fed. Supp. (2017)**

2017 WL 2985757

him leave to take jurisdictional discovery. 5BY2 also filed a 12(b)(6) motion to dismiss for failure to state a claim [21], which the Court entered and continued. [See 31.]

## II. Legal Standard

A plaintiff does not have an automatic right to jurisdictional discovery in every case. *Gilman Opco LLC v. Lanman Oil Co., Inc.*, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014). Rather, "it is within the discretion of the district court to allow a plaintiff to conduct limited discovery in order to establish that jurisdiction exists." *Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159 (7th Cir. 2000). The plaintiff must establish a colorable or *prima facie* showing of personal jurisdiction before discovery is permitted. *Indag GmbH & Co. v. IMA S.P.A.*, 150 F. Supp. 3d 946, 971 (N.D. Ill. 2015). In other words, the plaintiff must advance "proof to a reasonable probability" of the facts necessary to establish personal jurisdiction. *Pentwater Equity Opps. Master Fund, Ltd. v. Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.*, 2016 WL 6476541, at *1 (N.D. Ill. Nov. 2, 2016) (quoting *Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 316 (7th Cir. 1996)) (internal quotation marks omitted). Courts generally will grant jurisdictional discovery if the plaintiff "can show that the factual record is at least ambiguous or unclear on the jurisdictional issue." *Gilman Opco LLC*, 2014 WL 1284499, at *6 (citation and internal quotation marks omitted). "Although the standard to obtain jurisdictional discovery is low, courts will not permit discovery based only upon bare, attenuated, or unsupported assertions of personal jurisdiction or when a plaintiff's claim appears to be clearly frivolous." *Id.* (citation and internal quotation marks omitted). The Seventh Circuit has cautioned that "[f]oreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000).

**\*4** In ruling on a motion to take jurisdictional discovery, the Court accepts as true the factual allegations relevant to jurisdiction made in Plaintiff's complaint and draws all reasonable inferences in Plaintiff's favor. *Cent. States, Se. & Sw. Area Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 878 (7th Cir. 2006). However, to the extent that Defendant 5BY2 has submitted affidavits opposing jurisdiction or contradicting Plaintiff's allegations, Plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Pentwater*, 2016 WL 6476541, at *1 (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).

A federal district court sitting in diversity must apply the personal jurisdiction rules of the state in which it sits. *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). Illinois is the relevant state in this case. The governing statute in Illinois permits courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment. *Id.* (citing 735 ILCS 5/2-209(c)). The Due Process Clause authorizes personal jurisdiction over out-of-state defendants when the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citation and internal quotation marks omitted).

Courts recognize two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014). Specific jurisdiction is case-specific, and the claim must be linked to the activities or contacts with the forum. *Kipp*, 783 F.3d at 698. General jurisdiction, on the other hand, is "all purpose" and exists only "when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Id.* at 697–98 (citation and internal quotation marks omitted).

The Seventh Circuit has noted that in recent years the Supreme Court has raised the bar for general jurisdiction. *Kipp*, 783 F.3d at 698. "Because general jurisdiction exists even with respect to conduct entirely unrelated to the forum state, the Supreme Court has emphasized that it should not lightly be found." *Id.* Instead, general jurisdiction exists only when the organization is "essentially at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Thus far, the Supreme Court has identified only two places where that condition will be met: the state of the corporation's principal place of business and the state of its incorporation. *Kipp*, 783 F.3d at 698 (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)). Any additional bases for general jurisdiction "would have to meet the stringent criteria laid out in *Goodyear* and *Daimler*," which "require more than the substantial, continuous, and systematic course of business that was once thought to suffice." *Kipp*, 783 F.3d at 698 (citation and internal quotation marks omitted). Courts can exercise general jurisdiction only when "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit * * * on causes of action from dealings arising entirely distinctly from those activities." *Id.* (quoting *Daimler*, 134 S.

Marks v. Worldwide Robotic Automated Parking, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 2985757

Ct. at 761) (emphasis in original). In other words, a foreign corporation's affiliation with the state must be "so continuous and systematic" as to render it essentially at home in the forum state. *Daimler,* 134 S. Ct. at 761. Additionally, general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.* at 762 n.20.

### III. Analysis

**\*5** Plaintiff makes two main arguments related to general jurisdiction. First, Plaintiff argues that 5BY2 should be subject to the Court's jurisdiction by virtue of its subsidiary 5BY2 US Inc.'s connections with the forum because piercing the corporate veil is warranted. Second, Plaintiff argues that documentary evidence demonstrates that 5BY2 solicits business in Illinois, thus contradicting Koot's declaration that "5BY2 does not solicit business in Illinois, and has never done so." [19, Exhibit B, at ¶ 28.] The Court will address each argument in turn. The Court also notes that Plaintiff does not argue that he should be permitted to take jurisdictional discovery as to specific jurisdiction, and thus this argument is waived. See *United Fin. Mortg. Corp. v. Bayshores Funding Corp.,* 245 F. Supp. 2d 884, 891 (N.D. Ill. 2002) (explaining that plaintiff had waived an argument for general jurisdiction where plaintiff did not develop an argument for general jurisdiction).

Plaintiff argues that "[b]ased on publicly available information, one can infer that 5BY2 and 5BY2 US Inc. do not observe corporate formalities," such that piercing the corporate veil is warranted and the Court should exercise jurisdiction over 5BY2 based on 5BY2 US Inc.'s connections with Illinois. [44, at 3.] Ordinarily, the jurisdictional contacts of a subsidiary corporation are not imputed to the parent corporation. *City of Greenville v. Syngenta Crop Pro., Inc.,* 830 F. Supp. 550, 555 (S.D. Ill. 2011). However, if a parent exercises "an unusually high degree of control" over the subsidiary or corporate formalities are not observed, a court may have personal jurisdiction over a parent based on the subsidiary's contacts. See *id.* Where a plaintiff claims a parent company is subject to a court's jurisdiction by virtue of its subsidiary's contacts, the court considers the following facts:

(1) whether officers or directors are the same; (2) how much control is exerted by parent over daily affairs of its subsidiary; (3) whether parent arranges financing for and capitalization of subsidiary; (4) whether separate books, tax returns, and financial statements are kept; (5) whether parent holds its subsidiary out as agent; and (6) the method of payment made to parent by subsidiary.

*City of Greenville,* 830 F. Supp. 2d at 555. Plaintiff infers that 5BY2 and 5BY2 US Inc. do not observe corporate formalities because 5BY2 US Inc. does not have an independent website and instead shares a website with 5BY2, 5BY2's website provides the address of 5BY2 US's New York office, and 5BY2 and 5BY2 US Inc. share a brand logo. Plaintiff concedes, however, that he cannot establish that 5BY2 exercises a high degree of control over 5BY2 US Inc.

The Court is not convinced that Plaintiff has made a *prima facie* case of general jurisdiction based on piercing the corporate veil. First of all, the factors to which Plaintiff cites "bespeak a certain degree of integration between the two corporations," but "do not suggest a misuse of corporate form." *Bridge v. New Holland Logansport, Inc.,* 815 F.3d 356, 364 (7th Cir. 2016) (declining to pierce the corporate veil where parent and subsidiary shared similar names, shared directors, shared certain employees' services, used the same address on their tax returns, and shared a website); see also *Reimer,* 230 F.3d at 946 (holding that plaintiff was not entitled to take jurisdictional discovery where "[a]lmost all of [plaintiff's] evidence showed only that [defendants] were affiliated with [subsidiary], without any showing that the defendants exercised an unusually high degree of control over [subsidiary] or that corporate formalities were not substantially observed"); *Muniz v. Walgreen Co.,* 46 F. Supp. 3d 117, 124 (D.P.R. 2014) (declining to pierce the corporate veil despite plaintiff's allegations that the parent and subsidiary both "do business as Walgreens," share the same website, share common trademarks, logos, advertisements, marketing image and integrated sales systems, and shared a standard distribution protocol, and explaining that "[t]hese facts, without more, simply indicate that Walgreen Co. and Walgreen of San Patricio share a close branding relationship").

**\*6** Additionally, Defendant 5BY2 has submitted evidence that 5BY2 and 5BY2 US Inc. do, in fact, observe corporate formalities. See *Pentwater,* 2016 WL 6476541, at \*1 (explaining that to the extent that the defendant has submitted affidavits opposing jurisdiction or contradicting the plaintiff's allegations, the plaintiff "must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction"). Koot's "Declaration Regarding Jurisdictional Discovery" states that 5BY2 and 5BY2 US Inc. operate as separate business entities, keep separate books, file separate tax returns, and produce separate financial statements. [49, Exhibit C, at ¶¶ 3, 10–12.] The companies also maintain separate and non-overlapping boards. [*Id.* at

Marks v. Worldwide Robotic Automated Parking, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 2985757

¶ 9.] Although there is some overlap among the companies' officers, as Koot is President of both companies, the boards are otherwise separate. See *Bridge*, 815 F.3d at 365 (concluding that corporate formalities were observed and noting that "[t]hough board membership overlapped, the two boards were otherwise separate"). Thus, Plaintiff has not advanced "proof to a reasonable probability" of the facts necessary to establish personal jurisdiction based on piercing the corporate veil. *Pentwater*, 2016 WL 6476541, at *1 (citation and internal quotation marks omitted).

Next, Plaintiff argues that documentary evidence demonstrates that 5BY2 is involved with 5BY2 US Inc.'s solicitation of business in Illinois, thus contradicting Koot's statement that "5BY2 does not solicit business in Illinois, and has never done so." [19, Exhibit B, at ¶ 28.] In support of this argument, Plaintiff submits evidence that on August 21, 2015, an agent of 5BY2 or 5BY2 US Inc.[2] emailed a parking layout and estimate for property in Champaign, Illinois to a representative of CA Student Living Development and Management, LLC, which is an Illinois corporation with its principal office in Chicago, Illinois. [44, Exhibit D.] Plaintiff notes that Koot and Ian Todd, the CEO of 5BY2 US. Inc. at the time, were copied on the email. [See *id.*] Plaintiff further asserts that agents of 5BY2 participated in at least one conference call with representatives of CA Student Living to discuss "parking options for Champaign" and that Koot and Todd received a summary of the call. [44, Exhibit F.] Plaintiff also submits evidence that 5BY2 discussed with WRAP its goal of setting up regional parking services around the United States, including in Chicago, Illinois. [See 44, Exhibit G.] According to Plaintiff, "[s]uch facts indicate that 5BY2 might have personally availed itself of the Illinois market through its own actions and the actions of its subsidiary, 5BY2 US Inc."

Plaintiff argues that this evidence contradicts Koot's averment that 5BY2 does not solicit business in Illinois and has never done so and demonstrates that the factual record is "ambiguous or unclear" with respect to jurisdiction. In Plaintiff's view, this is enough to entitle him to jurisdictional discovery. In support of this argument, Plaintiff cites *Gilman Opco LLC v. Lanman Oil Company, Inc.*, in which the court granted in part the plaintiffs' motion for jurisdictional discovery after the plaintiffs submitted evidence calling into question statements in a declaration submitted by the president of the defendant corporation. 2014 WL 1284499, at *7 (N.D. Ill. Mar. 28, 2014). The court concluded that although the president did not necessarily lie in his declaration, the plaintiffs had put forth evidence sufficient

to question some of the representations in the president's declaration regarding whether the defendant corporation conducted business in the forum state and whether the defendant corporation's sales in the forum state accounted for a percentage of its total sales. *Id.* Thus, the court permitted the plaintiffs to depose the president regarding the representations in his affidavits and the scope of the defendant corporation's business more generally. *Id.*

The Court is not convinced by Plaintiff's arguments. First of all, Plaintiff acknowledges that the documentary evidence he presents may concern business solicitations made by the subsidiary 5BY2 US Inc., and not solicitations made by the parent company, Defendant 5BY2. As explained above, the Court does not have personal jurisdiction over the parent company, Defendant 5BY2, based on its subsidiary's contacts with the forum state. The fact that Koot was copied on the emails and that agents of 5BY2 were on at least one conference call does not indicate that 5BY2 was soliciting business in Illinois. Cf. *Erie Foods Int'l v. Apollo Grp. & Apollo USA, Inc.*, 2006 WL 932344, at *4 (N.D. Ill. Apr. 10, 2006) (noting that a parent company reviewing its subsidiary's business plans was simply an "incident [ ] of a parent-subsidiary relationship"). Thus, the evidence supplied by Plaintiff may be perfectly consistent with Koot's declaration that 5BY2 does not solicit business in Illinois. Next, the evidence that 5BY2 discussed with WRAP its goal of setting up regional parking services in Chicago does not indicate that 5BY2 took any steps toward realizing this goal. Merely having a goal of doing business in the forum state falls far short of what is required to establish a *prima facie* case of general personal jurisdiction over the defendant. See *Daimler*, 134 S. Ct. at 761 (explaining that a foreign corporation's affiliation with the state must be "so continuous and systematic" as to render it essentially at home in the forum state)

**\*7** Finally, and perhaps most importantly, even if the Court were to permit Plaintiff to depose Koot about 5BY2's solicitation of business in Illinois and Plaintiff were to prove that 5BY2 did solicit business in Illinois, this would not be enough to establish general personal jurisdiction over 5BY2. See *Kipp*, 783 F.3d at 699 (holding that the fact that defendant company does solicit business in Illinois was not enough to establish personal jurisdiction, and noting that "no case has ever held that solicitation alone is sufficient for general jurisdiction"). Further, even if Plaintiff could show that this solicitation to CA Student Living resulted in Defendant 5BY2 actually doing business in Illinois, this alone still would not

**Marks v. Worldwide Robotic Automated Parking, LLC, Not Reported in Fed. Supp. (2017)**

2017 WL 2985757

be enough to establish general personal jurisdiction under the stringent standard set by *Goodyear,* 564 U.S. at 919, and *Daimler,* 134 S. Ct. at 762, especially when considering this one hypothetical transaction in the context of 5BY2's business activities in their entirety. See *Daimler,* 134 S. Ct. at 762 n.20 (noting that general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide"); *Kipp,* 783 F.3d at 699 (defendant Wisconsin company not subject to general personal jurisdiction in Illinois even though defendant attended trade show in Illinois each year, maintained website accessible by Illinois residents, offered "Chicagoland Express" package, and has substantial percentage of its customers from Illinois, where website was mostly informative and did not allow purchase of tickets, "Chicagoland Express" package was not limited to Illinois residents, defendant had no Illinois office or employees, was not registered to do business in Illinois, and did not advertise in Illinois); *Pentwale,* 2016 WL 6476541, at *3 (denying Plaintiffs' motion to take jurisdictional discovery and explaining that "[e]ven assuming, as Plaintiffs seek discovery to establish, that Defendant has performed substantial additional transactional work for Illinois clients, has solicited or is soliciting business from Illinois clients, has sponsored and solicited clients to attend a [ ] seminar in Illinois, and represents a number of [ ] companies that are located in Illinois, these contacts would not bring the sum total of Defendant's Illinois activities to the level required to establish general jurisdiction"). In sum, because discovery into personal jurisdiction would be futile, the Court denies Plaintiff's motion to conduct jurisdictional discovery [43].

**IV. Conclusion**

For the foregoing reasons, the Court denies Plaintiff's motion to conduct jurisdictional discovery [43]. Plaintiff is given until August 3, 2017 to file a response brief to Defendant 5BY2's motion to dismiss for lack of personal jurisdiction [19]; Defendant 5BY2 is given until August 17, 2017 to file a reply brief. The Court will issue a ruling by mail.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2985757

---

Footnotes

1   Defendant 5BY2 asserts that this meeting actually took place in November 2015. The date of this meeting does not affect the Court's analysis.

2   Plaintiff states that it is unclear whether the author of the email is referring to 5BY2 or 5BY2 US Inc. [44, 4 n.1.]

---

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Medline Industries, Inc. v. Diversey, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 5763637

2020 WL 5763637
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

MEDLINE INDUSTRIES, INC., Plaintiff,

v.

DIVERSEY, INC. and
Wypetech, LLC, Defendants.

No. 20 C 4424
|
Signed 09/28/2020

**Attorneys and Law Firms**

James L. Thompson, Amy J. (Hansen) Kanarowski, Daniel Francis Lynch, Lynch Thompson, LLP, Chicago, IL, for Plaintiff.

Richard Patrick Darke, Brian A. McAleenan, Keith M. St. Aubin, Duane Morris LLP, Chicago, IL, Ryan Downton, Pro Hac Vice, Duane Morris, Austin, TX, Sean S. Zabaneh, Pro Hac Vice, Duane Morris LLP, Philadelphia, PA, for Defendants.

**MEMORANDUM OPINION AND ORDER**

Ronald A. Guzmán, United States District Judge

**\*1** For the reasons explained below, the motion of defendant Diversey, Inc. ("Diversey") to dismiss the First Amended Complaint is granted in large part for lack of personal jurisdiction, and the motion of plaintiff Medline Industries, Inc. ("Medline") for leave to issue jurisdictional discovery is denied.

**BACKGROUND**

Medline, which manufactures and sells medical supplies, brought this action against Diversey and Wypetech, LLC ("Wypetech"), a company that Diversey acquired in July 2020. According to the First Amended Complaint, Medline entered into a requirements contract in 2014 with Wypetech's predecessor, Multi-Pack, LLC ("Multi-Pack"), pursuant to which Multi-Pack supplied Medline with Medline-branded disinfectant wipe products. In April 2019, Wypetech became Multi-Pack's assignee under the requirements contract, and Wypetech took over Multi-Pack's Wisconsin plant that had been manufacturing disinfectant wipes for Medline.

The complaint further alleges as follows. Under the contract, Medline would provide non-binding rolling ninety-day forecasts of its product requirements, and thereafter would submit purchase orders for the products. Wypetech, which the contract stated would be the exclusive manufacturer of the products, was obligated to manufacture products in accordance with the forecasts and had the discretion to accept the portions of purchase orders that were in excess of the forecasts. The initial term of the contract ran through August 2019, with automatic renewal for one-year terms absent written notice to the contrary. The contract renewed in August 2019, and neither party provided notice of non-renewal this year, so it currently runs through August 2021.

Until this spring, Wypetech filled Medline's purchase orders without issues. Even after the explosion in demand for disinfectant products and wipes that was caused by the COVID-19 crisis, Wypetech worked closely with Medline to keep production at the levels Medline needed. In April 2020, Wypetech fulfilled Medline's order for more than 60,000 cases of wipes, and Medline submitted additional forecasts for the following months at levels approximating that of April.

Things changed in May. Wypetech's delivery of disinfectant wipes began to run far behind Medline's purchase orders. Wypetech representatives told Medline that the shortfall was due to Wypetech's inability to obtain sufficient component materials, and assured Medline that Wypetech was working to secure the materials that would enable it to provide sufficient supply. But after the week of June 22, 2020, Wypetech ceased delivering wipes to Medline altogether, and stopped timely responding to Medline's emails and phone calls.

On July 9, 2020, Wypetech informed Medline in an email that Wypetech had been acquired by Diversey, a competitor of Medline with respect to disinfectant wipes. Wypetech also told Medline that it would not accept new purchase orders, based on the "integration of the Wypetech business into Diversey." (ECF No. 41, 1st Am. Compl. ¶ 45.) In Medline's view, "it quickly became apparent that Diversey had been involved in the slowdown of Wypetech's supply of [p]roducts to Medline and that Diversey intended to continue to control and direct how Wypetech would dedicate its capacity to fill customer orders in a way that would significantly delay and sharply curtai[l] deliveries to Medline." (*Id.* ¶ 49.) Later in

Medline Industries, Inc. v. Diversey, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 5763637

July, Diversey offered to allow Wypetech to provide Medline with 7,500 cases of wipes per month to fulfill previously-accepted orders, and then increased this number to 10,000, indicating that that was the most it would allow Wypetech to make for Medline. Diversey asserted that component-supply issues continued, but Medline says that Wypetech's current manufacturing schedule belies that representation.

**\*2** Medline alleges that Diversey is instructing Wypetech to repudiate the requirements contract, and that this instruction renders Medline unable to fulfill its customers' needs. Medline states that it is searching for an alternate supplier but has yet to obtain one and is unlikely to be able to do so until sometime in 2021.

Medline asserts a claim against Wypetech for breach of contract and a claim against Diversey for tortious interference with contract and seeks preliminary and permanent injunctive relief as well as compensatory and punitive damages. Subject-matter jurisdiction is based on diversity of citizenship. Medline is a corporation incorporated in Illinois with a principal place of business in Illinois. Diversey is a corporation incorporated in Delaware with a principal place of business in South Carolina. Wypetech is a limited liability company whose sole member is Diversey; thus, Wypetech is also a citizen of Delaware and South Carolina. The forum-selection clause of the contract between Medline and Wypetech requires any claim arising under or related to the contract to be brought in state or federal court in Illinois.

Diversey asserts that this Court lacks personal jurisdiction over it and that Medline fails to state a claim against it. The Court limits its analysis to the personal-jurisdiction issue because it is dispositive.

## DISCUSSION

A complaint need not include facts alleging personal jurisdiction, but once a defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When the court rules on the motion without a hearing, the plaintiff's burden is to establish a prima facie case of personal jurisdiction. *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015). To determine whether plaintiff has done so, the Court reads the complaint "liberally, in its entirety, and with every inference drawn in favor" of plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006).

"District courts exercising diversity jurisdiction apply the personal jurisdiction rules of the state in which they are located." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015). "Because Illinois permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state statutory and federal constitutional requirements merge." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010) (citing, *inter alia*, 735 ILCS 5/2-209(c)).

Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts with the forum state. *Id.* Medline relies only on specific jurisdiction. Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; those contacts must be "directly related to the conduct pertaining to the claims asserted." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). Specific jurisdiction lies only where the defendant's " 'suit-related conduct' " creates a " 'substantial connection' " with the forum state. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). There are various formulations of the standard for establishing specific personal jurisdiction, but they can be condensed into three essential requirements: (1) the defendant must have purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

**\*3** Courts evaluate specific jurisdiction "by reference to the particular conduct underlying the claims made in the lawsuit." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010); *see also Felland*, 682 F.3d at 674. Medline's claim against Diversey is for tortious interference with contract. For intentional torts, the purposeful-direction inquiry has three prongs, requiring "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 703.

Medline Industries, Inc. v. Diversey, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 5763637

The second prong, "express aiming," is where the dispute lies. The Court considers whether the defendant's suit-related conduct is connected to the forum state in a meaningful way. *Walden*, 571 U.S. at 286-90; *Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018). "The connection must be of the defendant's creation, not of the plaintiff's." *Ariel*, 881 F.3d at 522. "It is not enough that a defendant know that any injury resulting from alleged tortious conduct would be felt in the forum state." *Green Light Nat'l, LLC v. Kent*, No. 17 C 6370, 2018 WL 4384290, at *3 (N.D. Ill. Sept. 14, 2018); *see also Ariel*, 881 F.3d at 522 ("Knowing about a potential for harm in a particular state is not the same as acting *in* that state—and it takes the latter to permit personal jurisdiction under state law.")).

Diversey contends that Medline's personal-jurisdiction allegations are insufficient because they rely nearly entirely on Medline's presence and alleged injury in Illinois to establish minimum contacts. Diversey acknowledges that the complaint refers to some email and telephone communications between Diversey and Medline, but contends that they are too minimal to give rise to personal jurisdiction and do not directly relate to the alleged conduct.

In response, Medline relies on the following contacts.[1] In response to a July 17, 2020 email from Medline in which Medline asked whether Diversey agreed that the contract between Medline and Wypetech was "binding on Diversey," Diversey's general counsel responded that while Diversey had purchased 100 percent of Wypetech's membership interests, the parties to the contract remained Wypetech and Medline. (ECF No. 41-5.) During telephone calls with Medline representatives on July 22 and 23, 2020, Diversey representatives stated what the "ceiling" would be on the number of cases of disinfectant wipes Diversey was allowing Wypetech to make for Medline. (Compl. ¶ 50.) Diversey representatives "indicated" (the complaint does not say how they so communicated, when, to whom, or in what context) that Wypetech would not "promptly satisfy the outstanding backlog in purchase orders." (*Id.* ¶ 67.) Aside from these contacts, Medline also cites some communications between Diversey and Wypetech, or between Wypetech and Medline, such as a statement from Wypetech, in response to Medline's July 9 inquiry about an unspecified "offer bid," that "all Medline/Wypetech correspondence" had to go "through" a certain Diversey employee, (ECF No. 41-4.) Medline characterizes these communications as interference with Wypetech's "communications with Medline in Illinois," or interference with Wypetech's production and shipment

of orders "to Illinois." (ECF No. 73, Pl.'s Resp. at 10-11.) Medline further argues that at all relevant times, Diversey was aware of the "Illinois-based" contract between Medline and Wypetech; caused Wypetech to breach that contract; acted with an intent to deprive Medline of its supply of a critical product at a critical time; and knew that Medline would feel the impact of this injury at its headquarters in Illinois. (*Id.* at 11.)

**\*4** The Court's inquiry "focuses on whether *the conduct underlying the claim* was purposely directed at the forum state." *Felland*, 682 F.3d at 674 (emphasis added and internal punctuation and citation omitted). Medline's claim against Diversey is based on the allegations that Diversey directed Wypetech to repudiate the requirements contract by instructing Wypetech to dishonor Medline's purchase orders and to delay and limit deliveries to Medline. Those actions were not undertaken in Illinois; neither Diversey nor Wypetech is located in Illinois. Diversey's principal place of business is in South Carolina, and Wypetech's principal place of business is in Wisconsin. (And, as the complaint sets out, Wypetech manufactures Medline-branded wipes in Wisconsin.) Medline offers no evidence to suggest that the conduct underlying its claim against Diversey occurred in Illinois. As for the cited communications between Diversey and Medline, they are sparse and insufficient to create personal jurisdiction. The email from Diversey's general counsel, described above and attached as Exhibit 5 to the complaint, was a response to an emailed question from Medline. Medline fails to provide details or submit evidence regarding the telephone calls or to submit evidence indicating that Diversey initiated the communications. Medline maintains that the communications "furthered Diversey's tortious conduct directed at Illinois," (Pl.'s Resp. at 10), but does not explain this assertion. To establish a claim for tortious interference with contract, the only conduct by a defendant that a plaintiff must prove is the intentional and unjustified inducement of the breach of a valid and enforceable contract between plaintiff and another. *See, e.g.*, *Mission Measurement Corp. v. Blackbaud, Inc.*, No. 16 C 6003, 2019 WL 4958236, at *3 (N.D. Ill. Oct. 8, 2019). Diversey's communications with Medline did not cause the alleged injury, they were not the means by which Diversey allegedly accomplished the alleged tortious interference, and they did not "further" the alleged inducement of a breach. Contrary to Medline's contention, those communications are not "directly related" to the tortious conduct, *see Brook*, 873 F.3d at 552; they are only tangentially related. *See Monco v. Zoltek Corp.*, No. 17 C 6882, 2019 WL 952138, at *13

Medline Industries, Inc. v. Diversey, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 5763637

(N.D. Ill. Feb. 27, 2019) (rejecting plaintiff's argument that defendant "expressly aimed" its tortious conduct at Illinois, where the actions alleged to underlie the tortious interference occurred in Missouri, and defendant's communications with plaintiff were "simply part of the circumstances explaining [defendant's] alleged motive"). The remaining allegations Medline relies upon to establish jurisdiction are not founded on Diversey's conduct, but on Medline's presence in Illinois, and plaintiff cannot be the only link between the defendant and the forum in order to satisfy the express-aiming prong. *See Walden*, 571 U.S. at 285; *Weisskopf v. Marcus*, 695 F. App'x 977, 978 (7th Cir. 2017) (observing that *Walden* "holds that it does not matter where effects are felt").

Medline fails to plead conduct or submit evidence establishing the required "substantial connection" between Diversey and Illinois.[2] This action therefore will be dismissed as against Diversey for lack of personal jurisdiction. Diversey seeks a with-prejudice dismissal, but that is not an appropriate disposition. *See, e.g., Peters v. Sloan*, 762 F. App'x 344, 346 (7th Cir. 2019) (dismissals for lack of personal jurisdiction ordinarily are without prejudice). The dismissal will be without prejudice, so that Medline can refile its claim against Diversey where a court would have personal jurisdiction. Given this ruling, the Court does not address Diversey's arguments for dismissal under Rule 12(b)(6). *See Burmaster v. Herman*, 737 F. App'x 790, 791 (7th Cir. 2018).

Medline moves alternatively for leave to issue jurisdictional discovery in the event that its allegations are found insufficient to confer personal jurisdiction. Medline must make a "colorable" showing of personal jurisdiction before discovery is allowed. *See Seo v. H Mart Inc.*, No. 19 C 3248, 2020 WL 5547913, at *4 (N.D. Ill. Sept. 16, 2020); *Bradford Victor-Adams Mut. Ins. Co. v. Electrolux Home Prods., Inc.*, No. 4:18-CV-04167-SLD-JEH, 2019 WL 3604594, at *4 (C.D. Ill. Aug. 6, 2019).[3] Generally, courts grant jurisdictional discovery if the factual record is ambiguous or unclear on the issue, *Sullivan v. Sony Music Ent.*, No. 14 C 731, 2014 WL 5473142, at *5 (N.D. Ill. Oct. 29, 2014), but when a lack of personal jurisdiction is clear, jurisdictional discovery would serve no purpose and should not be permitted, *John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC*, No. 16 C 5918, 2017 WL 1093150, at *12 (N.D. Ill. Mar. 23, 2017), *aff'd sub nom. John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692 (7th Cir. 2018). Medline has failed to establish a colorable basis for personal jurisdiction over Diversey.[4] There is no ambiguity here regarding the extent of Diversey's suit-related contacts with Illinois, and Medline has had ample opportunity to submit evidence on that issue. Accordingly, the Court denies Medline's motion for leave to conduct jurisdictional discovery.

## CONCLUSION

**\*5** The motion of defendant Diversey, Inc. to dismiss the First Amended Complaint [46] is granted in large part. The First Amended Complaint is dismissed without prejudice as against Diversey, Inc. for lack of personal jurisdiction. Plaintiff's motion for leave to issue jurisdictional discovery [74] is denied.

## All Citations

Not Reported in Fed. Supp., 2020 WL 5763637

---

Footnotes

1    Medline does not rely on its allegations in the amended complaint that Diversey does business in this district, has "scores" of employees in the Chicago area, or invoked or submitted to the court's jurisdiction in two other cases that were pending in the Northern District of Illinois. (Compl. ¶¶ 8-10.) Those factors are not relevant to this specific-jurisdiction analysis, in any event. Medline does point out that Diversey was "founded in Chicago and named for Diversey Avenue," (ECF No. 73, Pl.'s Resp. at 14), but that bit of trivia is also irrelevant.

2    Thus, the Court need not go further in the personal-jurisdiction analysis by analyzing the other requirements, such as "fair play and substantial justice." *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 496 (7th Cir. 2014).

3    This Court agrees with the district court in *Bradford Victor-Adams* that since a "prima facie" showing based on the written submissions is sufficient to establish personal jurisdiction, "it seems illogical to apply this standard to a request for discovery," and that the proper standard to apply to requests for jurisdictional discovery is the requirement of a "colorable" showing. 2019 WL 3604594, at *4 n.4.

**Medline Industries, Inc. v. Diversey, Inc., Not Reported in Fed. Supp. (2020)**

2020 WL 5763637

4    Medline states in its motion for leave to issue discovery that Diversey is selling its own wipes to Medline in Illinois "that in the absence of the interference would have been manufactured for Medline by Wypetech," and that this conduct "further closes the loop on Diversey's interference" and "involves conduct connected to the tort that is targeted at Illinois." (ECF No. 74, Pl.'s Mot. Leave Issue Disc. at 3-4.) The Court is unpersuaded, and agrees with Diversey that the argument "is merely a re-packaging of Medline's claim that it was harmed in Illinois by Diversey's conduct." (ECF No. 81, Def.'s Resp. at 3.)

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Rawlins v. Select Specialty Hospital of Northwest Indiana, Inc., Not Reported in Fed....

2014 WL 1647182

2014 WL 1647182
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Sarah RAWLINS, individually and
as Administrator of the estate of
Aubrey Rawlins, deceased, Plaintiff,
v.
SELECT SPECIALTY HOSPITAL OF
NORTHWEST INDIANA, INC., Defendant.

Case No. 13 C 7557
|
Signed April 23, 2014

**Attorneys and Law Firms**

Sarah Rawlins, Markham, IL, pro se.

Joseph Stalmack, Joseph Stalmack and Associates, Munster, IN, for Defendant.

*MEMORANDUM OPINION & ORDER*

JOAN B. GOTTSCHALL, United States District Judge

**\*1** Plaintiff Sarah Rawlins brought this action pro se against defendant for medical malpractice related to her husband's death. Before the court is Defendant Select Specialty Hospital of Northwest Indiana, Inc.'s motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). In the alternative, Select asks this court to dismiss the claim for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) or for improper venue pursuant to Fed.R.Civ.P. 12(b)(3). The court concludes that Rawlins cannot establish personal jurisdiction over Select. Accordingly, the court dismisses the complaint under Rule 12(b)(2).

**I Background**

This is the second case Rawlins has brought against Select in this court for medical malpractice related to her husband's death. Rawlins filed the first case in this court on August 4, 2009. On March 8, 2010, the court dismissed Rawlins's amended complaint for failure to establish personal jurisdiction over Select. There, the court wrote:

> Defendant is incorporated in Missouri and based in Hammond, Indiana. Defendant's chief executive officer avers that defendant owns no assets in Illinois, and transacts no business in this state. That affidavit also makes clear that all of the medical care giving rise to the plaintiff's claim took place at the defendant's facility in Indiana, and the Complaint does not allege any facts suggesting otherwise....

> Sitting in diversity, this court applies the personal jurisdiction rules of Illinois, the forum state. *Daniel J. Hartwig Assocs., Inc. v. Kramer,* 913 F.2d 1213, 1216 (7th Cir. 1990). Illinois allows for general jurisdiction pursuant to its long-arm statute, and specific jurisdiction over persons engaging in certain conduct for suits arising from that conduct. *See* 735 Ill. Comp. Stat. 5/2–209(a) & (c). There are no facts suggesting that, whatever defendant's geographical proximity to this court, it has engaged in any conduct that would subject it to jurisdiction here. The burden is plaintiff's to establish personal jurisdiction, *Steel Warehouse of Wis., Inc. v. Leach,* 154 F.3d 712, 714 (7th Cir.1998), and plaintiff has failed to do so. Her amended complaint is therefore dismissed for lack of personal jurisdiction.

*Rawlins v. Select Specialty Hosp. of Nw. Ind., Inc.,* No. 1:09–cv–04753, ECF No. 21.

Subsequently, on April 7, 2010, the parties agreed to transfer the case to the Northern District of Indiana. The case proceeded in that court, but on September 13, 2012, Rawlins filed a motion to transfer her case back to the Northern District of Illinois. The Northern District of Indiana denied the motion without prejudice. On October 26, 2012, Rawlins filed a notice of voluntary dismissal, and the Northern District of Indiana dismissed the case without prejudice on December 4, 2012.

Rawlins now returns to this court with a complaint containing identical allegations of medical malpractice as the amended complaint from her first suit. Select moves to dismiss for failure to state a claim, Fed.R.Civ.P. 12(b)(6) or in the alternative, for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(3), or improper venue, Fed.R.Civ.P. 12(b)(3).[1]

## II. Multiple Motions Under Rule 12(B)

**\*2** Pursuant to Fed.R.Civ.P. 12(g)(2), Select must consolidate its Rule 12(b) defenses into one motion rather than raise them seriatim. Select has done so, asking the court to evaluate its 12(b)(6) motion as the "primary" motion, and to evaluate the 12(b)(2) and the 12(b)(3) motions as alternative arguments. The court cannot evaluate the 12(b)(6) motion before discussing the 12(b)(2) motion.

In *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998), the Supreme Court considered an approach adopted by some federal circuit courts called the "doctrine of hypothetical jurisdiction." *Id.* at 94. Under that doctrine, courts would "proceed immediately to the merits question, despite jurisdictional objections, at least where (1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party on the merits were jurisdiction denied." *Id.* at 93. The Supreme Court rejected the doctrine, reaffirming that jurisdiction is a threshold requirement that must be satisfied before a court can pass judgments on the merits. *Id.* at 94 (citing *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

*Steel Co.* involved a party filing motions to dismiss under Rules 12(b)(6) and 12(b)(1) (lack of subject-matter jurisdiction). But its logic applies with equal force to a motion to dismiss under Rule 12(b)(2) (lack of personal jurisdiction). *See Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 577–78 (1999) (noting that there is "no unyielding jurisdictional hierarchy" requiring a court to consider subject-matter jurisdiction before personal jurisdiction, but emphasizing *Steel Co.'s* holding that jurisdictional issues must be decided before merits issues).

The court must satisfy itself that it can exercise personal jurisdiction over Select before it addresses the merits of the case. Accordingly, the court must consider Select's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) before it can address the Rule 12(b)(3) and Rule 12(b)(6) motions. If the court determines that it lacks personal jurisdiction over Select, it would be improper for this court to reach the merits of the case.

## III. Legal Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(2)

When a defendant moves for dismissal under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *Citadel Grp., Ltd. v. Wash. Reg'l Med. Ctr.,* 536 F.3d 757, 761 (7th Cir.2008). If no evidentiary hearing is held and the motion is decided on written materials submitted by the parties, as is the case here, the plaintiff must make only a prima facie case of personal jurisdiction. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). The plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (internal citations and quotation marks omitted).

Personal jurisdiction may be general or specific. General jurisdiction is available when the defendant's contacts with the forum state are "continuous and systematic," even when the suit in question does not arise out of those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984). Specific jurisdiction is appropriate when the suit at issue arises out of the defendant's contacts with the forum. *Id.* at 414 & n.8.

**\*3** A federal court exercising diversity jurisdiction has personal jurisdiction over a party only if a court of the state in which it sits would have such jurisdiction. *Philos Techs., Inc. v. Philos & D, Inc.,* 645 F.3d 851, 855 n.2 (7th Cir.2011) (citing *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir. 1997)). Illinois allows for general jurisdiction pursuant to its longarm statute, and specific jurisdiction over persons engaging in certain conduct for suits arising from that conduct. *See* 735 Ill. Comp. Stat. 5/2–209(a) & (c).

The Due Process Clause of the Fourteenth Amendment prevents a state from exercising personal jurisdiction over a defendant unless the defendant has had "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). A state has an interest in providing its residents with a forum for redressing harms caused by an out-of-state actor that has " 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)). The defendant's contacts

Rawlins v. Select Specialty Hospital of Northwest Indiana, Inc., Not Reported in Fed....

2014 WL 1647182

with the forum state must be such that it could "reasonably anticipate being haled into court there." *Id.* at 474 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295 (1980)).

## IV. Analysis

Rawlins bears the burden of showing that the court can exercise personal jurisdiction over Select. But Rawlins fails to satisfy the burden on the basis of specific or general personal jurisdiction. Accordingly, the court grants Select's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

Illinois's long-arm statute provides that a court may exercise specific personal jurisdiction over a party that commits one of fourteen enumerated acts. 735 Ill. Comp. Stat. 5/2–209(a). Rawlins argues that "Plaintiff has committed at least seven (7) of these under that law." (Pl.'s Response 12, ECF No. 21). Because Rawlins proceeds pro se, the court construes her pleadings liberally. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). Doing so, the court assumes that Rawlins meant to say that *Defendant* has committed at least seven of the acts from the statute. Whether *Rawlins* has committed those acts is irrelevant to whether this court can exercise specific personal jurisdiction over Select.

Thus, the court must determine whether Select has committed any of the fourteen enumerated acts listed in Illinois's long-arm statute. Rawlins's response brief does not specify which of the fourteen acts she believes Select committed. The fourteen acts are:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

(3) The ownership, use, or possession of any real estate situated in this State;

(4) Contracting to insure any person, property or risk located within this State at the time of contracting;

(5) With respect to actions of dissolution of marriage, declaration of invalidity of marriage and legal separation, the maintenance in this State of a matrimonial domicile at the time this cause of action arose or the commission in this State of any act giving rise to the cause of action;

**\*4** (6) With respect to actions brought under the Illinois Parentage Act of 1984, as now or hereafter amended, the performance of an act of sexual intercourse within this State during the possible period of conception;

(7) The making or performance of any contract or promise substantially connected with this State;

(8) The performance of sexual intercourse within this State which is claimed to have resulted in the conception of a child who resides in this State;

(9) The failure to support a child, spouse or former spouse who has continued to reside in this State since the person either formerly resided with them in this State or directed them to reside in this State;

(10) The acquisition of ownership, possession or control of any asset or thing of value present within this State when ownership, possession or control was acquired;

(11) The breach of any fiduciary duty within this State;

(12) The performance of duties as a director or officer of a corporation organized under the laws of this State or having its principal place of business within this State;

(13) The ownership of an interest in any trust administered within this State; or

(14) The exercise of powers granted under the authority of this State as a fiduciary.

735 Ill. Comp. Stat. 5/2–209(a) (footnote omitted). The plaintiff has not pointed to, and the court cannot independently find, any indication that Select committed any of these fourteen acts. Select's chief executive officer submitted an affidavit stating that Select has no assets and transacts no business in Illinois and that all care and treatment of Rawlins's husband took place in Indiana. Rawlins does not allege that Select committed a tort in Illinois, and the remaining acts do not apply to Rawlins's suit.

Once Select submits an affidavit indicating it did not commit any of the acts listed in Illinois's long-arm statute, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 783 n.13 (7th Cir. 2003) (internal quotation marks omitted). Rawlins's response asserts "that the Defendant has been doing business in Illinois, for many

Rawlins v. Select Specialty Hospital of Northwest Indiana, Inc., Not Reported in Fed....

2014 WL 1647182

years," but Rawlins presents no evidence indicating this to be the case. (Pl.'s Response at 1, ECF No. 21). This conclusory assertion is insufficient to carry Rawlins's burden to "*produce* evidence supporting jurisdiction" under *Purdue*. *Id.* (emphasis added).

Rawlins also argues that her deceased husband was transferred to Select by an Illinois hospital. But Rawlins does not allege that Select was responsible for the transfer. Nor does Rawlins explain how her husband's transfer from an Illinois hospital to Select indicates that Select performed one of the fourteen acts required by Illinois's long-arm statute.

The court concludes now, as it did in Rawlins's original case, that it cannot exercise specific personal jurisdiction over Select. The court must then determine whether Rawlins demonstrates that the court can exercise general personal jurisdiction over Select. General personal jurisdiction applies when a court "exercise personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415 n.9 (1984).

**\*5** General jurisdiction is available when the defendant's contacts with the forum state are "continuous and systematic," even when the suit in question does not arise out of those contacts. *Id.* at 416. "To determine whether the contacts of the defendant are sufficiently systematic and continuous, courts analyze the nature as well as the substantiality of the defendant's contacts with the forum state such as [1] whether and to what extent the defendant conducts business in the forum state, [2] whether the defendant maintains an office or employees within the forum state, [3] whether the defendant sends agents into the forum state to conduct business, [4] whether the defendant advertises or solicits business in the forum state, and [5] whether the defendant has designated an agent for service of process in the forum state." *Genocide Victims of Krajina v. L–3 Servs., Inc.,* 804 F.Supp.2d 814, 819–20 (N.D.Ill.2011). No individual factor is dispositive, and each case requires the court to determine whether " 'under all the circumstances, it would be fair to subject a defendant to the jurisdiction of the Illinois courts.' " *ACUITY v. Roadtec, Inc.,* No. 13–cv–6529, 2013 WL 6632631, at \*4 (N.D.Ill.Dec. 16, 2013) (quoting *Alderson v. Southern Co.,* 747 N.E.2d 926, 941 (Ill.App.Ct.2001)). For a court to exercise general personal jurisdiction over an out-of-state resident, the contacts must be "significantly higher" than the threshold level of minimum contacts needed for specific jurisdiction. *Purdue,* 338 F.3d at 787.

Rawlins alleges that two of these five factors are present. First, Rawlins alleges that Select conducts business in Illinois. But as noted previously, Select's chief executive officer submitted an affidavit averring that Select does no business in Illinois. With this affidavit, the burden shifts back to Rawlins to submit evidence showing that Select conducts business in Illinois. *Purdue,* 338 F.3d at 783 n.13. Because she presents none, the court does not weigh this factor in favor of exercising general personal jurisdiction over Select.

Second, Rawlins asserts that Select has a registered agent in Chicago for process service. Select does not deny this allegation, but the court finds that the mere presence of one individual in Illinois to accept process does not rise to the level of "continuous and systematic" contacts needed for the court to exercise general jurisdiction over Select. Other states construing analogous long-arm statutes have reached the same conclusion. *E.g., Corchet v. Wal–Mart Stores, Inc.,* Civ. No. 6:11–01404, 2012 WL 489204, at \*4 (W.D.La. Feb. 13, 2012) (general jurisdiction cannot be founded solely on the presence of an agent for service of process); *Davis v. Quality Carriers, Inc.,* Nos. 08–4533(SRC), 08–6262(SRC), 2009 WL 3335860, at \*3 (D.N.J. Oct. 15, 2009) (presence in Pennsylvania of a Canadian corporation's registered agent for service of process is insufficient to convey general personal jurisdiction over the corporation in Pennsylvania); *Hodges v. Deltic Farm & Timber Co., Inc.,* Civ. A. No. 90–3998, 1991 WL 42577, at \*2 (E.D.La. Mar. 28, 1991) (presence of agent for service of process in Eastern District of Louisiana does not constitute "continuous and systematic" contacts with the district); *see also Palmer v. Kawaguchi Iron Works, Ltd.,* 644 F.Supp. 327, 331 (N.D.Ill.1986) ("[T]he mere presence of a single representative of a corporation who is limited to one type of activity does not ordinarily confer jurisdiction over the corporation as to matters unrelated to those activities."). Therefore, the court concludes that it cannot exercise general personal jurisdiction over Select.

Rawlins asks this court to give her "the opportunity to conduct jurisdictional discovery, monitored by the Court, to determine more information about the specifics of the Defendants' contacts with Illinois, in general and specifically, as related to the Plaintiff's claims" rather than dismiss her complaint (Pl.'s Response at 1, ECF No. 21). The court declines Rawlins's request.

Before this court can award jurisdictional discovery, "the plaintiff must establish a colorable or prima facie showing

Rawlins v. Select Specialty Hospital of Northwest Indiana, Inc., Not Reported in Fed....

2014 WL 1647182

of personal jurisdiction." *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 946 (7th Cir.2000). Rawlins fails to make such a prima facie showing. In this analysis, Rawlins "is entitled to the resolution in [her] favor all disputes concerning relevant facts presented in the record." *Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reins. Co.,* 440 F.3d 870, 878 (7th Cir.2006) (internal quotation marks omitted).

**\*6** Although Rawlins asserts that Select conducts business in Illinois, her allegation is conclusory and unsupported. *See Caribbean Broad. Sys., Ltd. v. Cable & Wireless, P.L.C.,* 148 F.3d 1080, 1090 (D.C.Cir. 1998) (indicating that plaintiff must allege some facts supporting a prima facie showing of personal jurisdiction before being entitled to jurisdictional discovery). Select's chief executive officer's affidavit contradicts Rawlins's assertion, and Rawlins has not meaningfully contradicted the affidavit. *See id.* ("[B]ecause 'plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for ... [jurisdictional] discovery ... must be denied.' ") (quoting *Poe v. Babcock Int'l, plc,* 662 F.Supp. 4, 7 (M.D.Pa.1985)).

Rawlins is entitled to resolution of fact disputes in her favor, and the court construes Rawlins's filings liberally because she proceeds pro se. Nevertheless, Rawlins has not made out a prima facie case for personal jurisdiction, so she is not entitled

to jurisdictional discovery. *See Reimer,* 230 F.3d at 946. With regard to Select conducting business in Illinois, Rawlins's allegation is conclusory: "Defendant continues to deny doing business in Illinois. Plaintiff asserts that the Defendant been doing business in Illinois, for many years." Had Rawlins cited facts indicating that Select operates in Illinois (for example, that Select has a patient intake center in Chicago or advertises on a billboard in Rockford), the court would have been more inclined to grant jurisdictional discovery. But merely alleging a conclusory statement cannot entitle a plaintiff to obtain discovery. Accordingly, Rawlins's request for jurisdictional discovery is denied.

**V. Conclusion**

Defendant's motion to dismiss for lack of personal jurisdiction is granted. "Given the Court's holding regarding the threshold issue of personal jurisdiction over Defendant[ ], the Court need not and should not reach Defendant['s] other motions." *LaSalle Bus. Credit, L.L.C. v. GCR Eurodraw S.p.A.,* No. 03 C 6051, 2004 WL 1880004 (N.D.Ill. Aug. 18, 2004).

**All Citations**

Not Reported in Fed. Supp., 2014 WL 1647182

Footnotes

1    The court has not addressed the issue of collateral estoppel because neither party has raised it.

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2880218
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

TEE TURTLE LLC, Plaintiff,

v.

The INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A
TO the COMPLAINT, Defendants.

Case No. 25 CV 02910
|
Signed October 9, 2025

**Attorneys and Law Firms**

Jon Robert Neuleib, Erickson & Oppenheimer, Chicago, IL,
Samantha Diane Parrish, Boies Schiller Flexner LLP, Los
Angeles, CA, for Plaintiff.

**MEMORANDUM OPINION AND ORDER**

Sharon Johnson Coleman, United States District Judge

 **\*1** Plaintiff Tee Turtle, LLC ("Plaintiff") in this "Schedule
A" case moves for entry of default and default judgment
against five defaulting defendants ("Defendants"). For the
following reasons, the Court denies Plaintiffs' motion for
entry of default and default judgment [57].

**BACKGROUND**

Plaintiff alleges that it is the owner of U.S. Copyright
Office Registration Nos. VA 2-103-871, VA 2-235-407,
VAu 1-418-553, VAu 1-418-554, Vau 1-425-168, VAu
1-425-567, VAu 1-425-570, VAu 1-470-662, VAu 1-470-587,
VAu 1-470-663, VAu 1-470-851, VAu 1-474-785, VAu
1-474-780, VAu 1-474-786, VA 2-121-364, VA 2-096-615,
VA 2-103-868, VA 2-153-475, VA 2-153-476, VA 2-153-479,
VAu 1-515-825, VA 2-234-587, Vau 1-515-820, and
VA 2-123-814 (the "Copyrights") and U.S. Trademark
Registration Nos. 4,587,024, 5,736,944, and 6,202,046 (the
"Trademarks"). (Dkt. 10 ¶ 1). Plaintiff's amended complaint

alleges that Defendants advertise, distribute, offer for sale,
and sell counterfeit products using unauthorized versions of
Plaintiff's Copyrights and Trademarks.

On September 26, 2025, Plaintiff filed a motion for entry
of default and default judgment. (Dkt. 57). In that motion,
Plaintiff moves this Court to enter a default judgment against
Defendants and order that: (a) Defendants are liable on
all counts of Plaintiff's amended complaint; (b) Plaintiff
is entitled to an award of $200,000 in statutory damages
against each Defendant; (c) Plaintiff is entitled to a permanent
injunction prohibiting Defendants from selling counterfeit/
infringing on the Trademarks and Copyrights; and (d)
Defendants must transfer all assets in their financial accounts
operated by Temu, as well as any newly discovered assets, to
Plaintiff. (*Id*. at \*15).

**DISCUSSION**

The Court is required to ensure it has jurisdiction over the
claims (subject matter jurisdiction) and power over the parties
(personal jurisdiction) before it can resolve a case. *Lightfoot
v. Cendant Mortg. Corp.*, 580 U.S. 82, 95, 137 S. Ct. 553, 562,
196 L. Ed. 2d 493 (2017). Federal courts have subject matter
jurisdiction in diversity cases and in cases involving federal
questions. 28 U.S.C. §§ 1331, 1332. This case concerns two
federal statutes, the Lanham Act and Copyright Act, which
Plaintiff argues give this Court jurisdiction over this matter.
(Dkt. 10 ¶¶ 11-13). While the Copyright Act may give the
Court subject matter jurisdiction over the claim, because it
does not grant personal jurisdiction, the Court must look
to Illinois law to determine whether the Court can exercise
personal jurisdiction over Defendants. *NBA Props., Inc. v.
HANWJHJ*, 46 F.4th 614, 620 (7th Cir. 2022).

The Illinois long-arm statute, which is "coextensive with
the Federal Constitution's Due Process Clause," confers
personal jurisdiction if "permitted by the Illinois Constitution
and the Constitution of the United States." *Manchester
United Football Club Ltd. v. Partnerships & Unincorporated
Associations Identified on Schedule A*, No. 24 CV 5692,
2024 WL 5202272, at \*2 (N.D. Ill. Dec. 23, 2024) (Shah,
J.) Federal due process allows a court to exercise personal
jurisdiction if the defendant has minimum contacts with the
forum state "such that the maintenance of the suit does not
offend 'traditional notions of fair play and substantial justice.'
" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)
(internal citations omitted). Personal jurisdiction can be either
general or specific. *J.S.T. Corp v. Foxconn Interconnect Tech.
Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020). Here, it is clear

from the face of the amended complaint that Plaintiff asserts specific personal jurisdiction only.

**\*2** Specific personal jurisdiction focuses on the connection between the defendant, the state, and the underlying controversy. *Manchester United,* 2024 WL 5202272, at *3 (internal citations omitted). This is a "defendant-focused" inquiry whereby the court must look at defendant's contacts with the state itself in making a minimum contact determination. *Id.* (internal citations omitted). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal citations and quotations omitted). While these principles apply to online sellers, *NBA Props.,* 46 F.4th at 622, courts are cautioned, in resolving jurisdictional issues involving online contacts, "to ensure that a defendant is not ha[u]led into court simply because the defendant owns or operates a website that is accessible in the forum." *Illinois v. Hemi Grp., LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

To exercise specific personal jurisdiction over Defendants, Plaintiff must show: (1) Defendants purposefully availed themselves of the privilege of conducting business in the forum state or personally directed activities at the state; (2) Plaintiff's alleged injury must have arisen out of Defendants' forum-related activities; and (3) any exercise of personal jurisdiction comports with the traditional notions of fair play and substantial justice. *See Curry v. Revolution Lab'ys, LLC,* 949 F.3d 385, 398 (7th Cir. 2020). As all of these elements must be met in order for a court to exercise specific personal jurisdiction. *See Curry,* 949 F.3d at 398.

### I. Purposeful Availment

Although Defendants do not have a physical presence in Illinois, (Dkt. 10 ¶ 22), this does not prevent the Court from finding sufficient minimum contacts exist to satisfy the purposeful availment inquiry of the specific personal jurisdiction analysis. *Manchester United,* 2024 WL 5202272, at *4 (internal citations omitted). As to online sellers, courts in this District have found that creating an interactive website which allows Illinois residents to purchase products through the website, selling products through third-party websites, sending written confirmation of sales to Illinois customers that contains an Illinois shipping address, and shipping products to customers in Illinois satisfies the purposeful availment prong. *Manchester United,* 2024 WL 5202272, at *4; *NBA Props.,* 46 F.4th at 624; *Curry,* 949 F.3d at 399.

Here, Plaintiffs allege that Defendants maintained a webpage on Amazon, Shein, Temu, and Walmart's e-commerce platform, which offered for sale the infringing products to Illinois consumers. (*See* Dkt. 10 ¶ 4). Specifically, Plaintiffs claim that Defendants "were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Illinois, in this Judicial District, through accounts ... on e-commerce sites ..." (*Id.* ¶ 17). However, Plaintiffs only attach screenshots of the purchase page of each of Defendants' online marketplace webpages. (Dkt. 17). The screenshots only show an Illinois address. (*Id.*) There is no confirmation of purchase or shipment. (*Id.*) What's more, Plaintiffs provide no evidence, whether in the form of a declaration/affidavit or through additional screenshots, of the actual sale of the infringing products, written confirmation of sales with an Illinois shipping address, or shipping confirmation to an Illinois address. *See Manchester United,* at *4. And indeed, Plaintiff informed this Court that it "*attempted* to initiate the purchase process of a Counterfeit Product from each of the Defendant Internet Stores[.]" (Dkt. 16 at *6 (emphasis added).) In other words, Plaintiffs' claims are solely based on screenshots of the purchase webpage of the various marketplace websites (which do not show an actual sale of any products to Illinois residents) and "on information and belief" that the infringing products have been sold to Illinois consumers. (*See* Dkt. 10 ¶ 18). Without more, this information alone is insufficient to allow confer specific personal jurisdiction over Defendants. *See Emoji Co. GmbH v. The Individuals, Corps., Ltd. Liab. Cos., P'ships, and Unincorporated Ass'ns Identified on Schedule A,* No. 23-cv-1112, (Dkt. 54, at 1) (N.D. Ill. Sept. 16, 2023) (Kness, J.) (finding no personal jurisdiction where defendants did not ship any infringing products); *see KTM AG v. The Individuals, Corps., Ltd. Liab. Cos., P'ships, and Unincorporated Ass'ns Identified on Schedule A,* No. 20-cv-06743, (Dkt. 177, at 1) (N.D. Ill. Apr. 13, 2022) (Kness, J.) (finding no jurisdiction where plaintiff provided no evidence that defendants made "even one sale into the state of Illinois").

**\*3** As Plaintiff has failed to show any confirmation of sale or shipment of the infringing products to Illinois residents, the purposeful availment prong is not satisfied and Plaintiff fails to make out a *prima facie* case for specific personal jurisdiction.

### CONCLUSION

For the foregoing reasons, the Court dismisses Plaintiffs' amended complaint for lack of jurisdiction [10] and denies Plaintiff's motion for entry of default and default judgment [57]. Civil case terminated.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2880218

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Unicolors, Inc. v. Shewin Flagship Shops, Not Reported in Fed. Supp. (2024)**

**2024 WL 4567268**



KeyCite Yellow Flag

Distinguished by Middleton Mixology LLC v. Partnerships and Unincorporated Associations Identified on Schedule A, N.D.Ill., February 17, 2025

2024 WL 4567268
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

UNICOLORS, INC., Plaintiff,

v.

SHEWIN FLAGSHIP SHOPS, Defendant.

Case No. 1:24-CV-2987
|
Signed October 24, 2024

**Attorneys and Law Firms**

Trevor William Barrett, Doniger / Burroughs PC, Venice, CA, Mackenzie Paladino, Doniger / Burroughs, New York, NY, for Plaintiff.

Shengmao Mu, Abby Marie Neu, Whitewood Law PLLC, New York, NY, Keaton David Smith, Whitewood Law PLLC, Manhattan, NY, for Defendant.

**MEMORANDUM OPINION AND ORDER**

Joan B. Gottschall, United States District Judge

**\*1** Plaintiff Unicolors, Inc. ("Unicolors"), accuses defendant Shewin Flagship Shops ("Shewin") of selling dresses bearing designs that infringe its copyrighted fabric floral pattern designs. Shewin offers the allegedly infringing apparel for sale on its Amazon.com store. *See* Second Am. Compl. ("SAC") ¶¶ 25–46, ECF No. 28. Two motions filed by Shewin are before the court. First, Shewin moves to quash a third-party subpoena ("the subpoena") dated September 24, 2024, issued by Unicolors to Amazon.com, Inc. ("Amazon"). Shewin contends that the subpoena seeks production of its customer information, which is allegedly protected by trade secret law. *See* Mot. to Quash 2–4, ECF No. 74. Shewin separately moves to dissolve the preliminary injunction and to dismiss the second amended complaint for lack of personal jurisdiction. ECF No. 57. For the reasons that follow, the court concludes that Shewin lacks standing to move to quash the third-party subpoena because it has not shown that its

customer information qualifies as a trade secret. The court also grants Shewin's motion to dismiss the second amended complaint for lack of personal jurisdiction and dissolves the preliminary injunction for want of personal jurisdiction.

**I. Procedural Background**

Unicolors initially brought this suit as a "Schedule A" case against 65 defendants. Orig. Sched. A, ECF No. 3. On May 15, 2024, this court ruled in this and three consolidated cases that Unicolors had not demonstrated that defendants were properly joined under Federal Rule of Civil Procedure 20(a)(2). *Bailie, et al. v. Defs. Listed on Sched. A*, 2024 WL 2209698. This court ordered the plaintiffs "to amend their complaints to eliminate all improperly joined defendants." *Id.* at \*6. Unicolors filed an amended complaint naming Shewin as the sole defendant. ECF No. 20 & Ex. A.

Unicolors then moved *ex parte* for a temporary restraining order freezing Shewin's assets. ECF No. 22. The court denied Unicolors' first motion for a temporary restraining order on June 4, 2024, holding that Unicolors had not shown that it had some likelihood of success on the merits or that it was likely to suffer irreparable harm absent a temporary restraining order. 2024 WL 3549568, at \*1–2. Unicolors filed its live, second amended complaint on June 18, 2024, and renewed its *ex parte* motion for a temporary restraining order the same day. SAC, ECF No. 28; Renewed Mot. TRO, ECF No. 29. This court granted the renewed motion and set a preliminary injunction hearing, which was continued on Unicolors' motion, once for 14 days. ECF No 35. When it extended the temporary restraining order on July 2, 2024, the court entered minutes stating in part: "Unless a hearing is requested by 10:30 a.m. on 7/17/24, the court will rule on the papers.... Plaintiff must serve this order in the manner specified in the temporary restraining order." Min. Entry 1 (July 2, 2024), ECF No. 34. The accompanying order, which was prepared by Unicolors' counsel, did not include language advising Shewin of its deadline to respond to the then-anticipated motion for preliminary injunction. *See* ECF No. 35 at 1.

**\*2** On Sunday, July 14, 2024, Unicolors filed a motion for preliminary injunction. ECF No. 41. While that motion was pending, two attorneys filed separate notices of appearance for Shewin on July 15, 2024. ECF Nos. 42, 43. Shewin did not object to, or request a hearing on, Unicolors' motion for preliminary injunction. In its briefing on the pending

**Unicolors, Inc. v. Shewin Flagship Shops, Not Reported in Fed. Supp. (2024)**

2024 WL 4567268

motions, Shewin represents that although it was served with the preliminary injunction motion, Unicolors did not serve it with the minute order of July 2, 2024, ECF No. 34, giving it until July 17, 2024, to request a hearing on the motion for preliminary injunction. *See* Mem. Supp. Mot. to Dissolve and Dismiss 10–11, ECF No. 58. That deadline passed, and having heard no objection from Shewin, the court granted Unicolors' motion for preliminary injunction on July 18, 2024. *See* Prelim. Inj., ECF No. 48.

Among other relief, the preliminary injunction froze Shewin's financial accounts until the conclusion of this case to preserve Unicolors' right to the equitable remedy of an accounting of profits from infringing sales. *See id.* ¶¶ 2, 6. The preliminary injunction also authorized Unicolors to propound limited discovery to Amazon as follows:

> 4. Upon Unicolors' request, Defendants and any third party with actual notice of this Order who is providing services for any of Defendants, or in connection with any of Defendants' Online Marketplaces, including, without limitation, any online marketplace platforms such as ... Amazon.com, Inc. ... (collectively, the "Third Party Providers"), shall, within seven (7) calendar days after receipt of such notice, provide to Unicolors expedited discovery, limited to copies of documents and records in such person's or entity's possession or control sufficient to determine:
>
> a. the identities and locations of Defendants, their officers, agents, servants, employees, attorneys, and any persons acting in active concert or participation with them, including all known contact information and all associated e-mail addresses;
>
> b. the nature of Defendants' operations and all associated sales, methods of payment for services, and financial information, including, without limitation, identifying information associated with the Online Marketplaces and Defendants' financial accounts, including Defendants' sales and listing history related to their respective Online Marketplaces;

*Id.* ¶ 4.

Over the next two months, Shewin sought and obtained two extensions of its deadline to answer the SAC based on representations that the parties were attempting to settle the case. *See* ECF Nos. 49, 53; *see also* Status Report 1 (Sept. 11, 2024), ECF No. 55. On September 17, 2024, Shewin filed its pending motion to dissolve the preliminary injunction and

to dismiss this case for lack of personal jurisdiction. ECF No. 57. The next day, Unicolors served Amazon with the subpoena at issue. Decl. of T. Barrett 1, ECF No. 82-1 Ex.1. The subpoena commands Amazon to produce documents sufficient to establish: (i) all "sales history of the accused products," including their shipment delivery locations; (ii) "destinations of all [accused products]" sold by Shewin; and (iii) "the location in which each purchaser ... purchased [accused products]." *Id.* Ex. A at 2–3.

Shewin filed its emergency motion to quash on October 2, 2024. ECF No. 74. Presumably, the motion was captioned as an emergency because Shewin alleged that the subpoena sought documents disclosing its trade secrets. *See id.* at 1. On October 3, 2024, this court administratively stayed the subpoena and set an expedited briefing schedule on the motion to quash. *See* Min. Entry, ECF No. 75. Both pending motions have been fully briefed. *See* Mot. to Quash, ECF No. 74; Mem. Opp'n Mot. to Quash, ECF No. 81; Reply Supp. Mot. to Quash, ECF No. 83; Mot. to Dissolve and Dismiss ("MTD"), ECF No. 57; Mem. Opp'n MTD, ECF No. 76; Reply Supp. MTD, ECF No. 84.

## II. Motion to Quash

**\*3** "Ordinarily, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 186 (N.D. Ill. 2013) (quoting *Kessel v. Cook Cnty.*, 2002 WL 398506, at *1–2, (N.D. Ill. Mar. 13, 2002)). Examples of interests that have been held to confer standing to challenge a third-party subpoena include "the assertion of work product or attorney-client privilege, interference with business relationships, or production of private information about the party that may be in the possession of a third party." *Id.* at 187 (collecting cases).

Shewin contends that it has third-party standing because it has a personal interest in protecting its alleged trade secrets. *See* Mot. to Quash 2–3. Specifically, it objects to the subpoena's command to produce "customer-specific information related to the names, addresses, and other contact information for customers of Defendant's products." *Id.* at 3.

The court has no trouble concluding that an adequately supported claim of trade secret protection confers third-party standing because Federal Rule of Civil Procedure 45 requires

Unicolors, Inc. v. Shewin Flagship Shops, Not Reported in Fed. Supp. (2024)

2024 WL 4567268

courts to issue an order quashing or modifying a subpoena "[t]o protect a person subject to or affected by a subpoena" if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i) (internal numbering and some punctuation omitted).

Nevertheless, to show third-party standing, Unicolors must do more than invoke trade secret protections in a talismanic manner. The moving party must "first assert a personal right or privilege and then establish that the material it seeks to protect falls into one of the permitted categories under Rule 45." *Soto v. Kale Realty, LLC*, 2016 WL 11953040, at *2 (N.D. Ill. July 25, 2016). This requirement that the moving party establish the elements of a trade secret flows from the general rule that the party moving to quash under Rule 45 bears the burden to show that the subpoena should be quashed or modified. *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002) (citing *Kaiser v. Mut. Life Ins. Co.*, 161 F.R.D. 378, 380 (S.D. Ind. 1994); *Architectural Iron Workers' Local No. 63 Welfare Fund v. Legna Installers Inc.*, 2023 WL 2974083, at *1 (N.D. Ill. Apr. 17, 2023)).

The question therefore becomes: has Shewin carried its burden to show that the customer information Unicolors seeks is entitled to trade secret protection? *See Soto*, 2016 WL 11953040, at *2–3. The parties have not briefed choice of law. Assuming without deciding that Illinois law applies, the party seeking trade secret protection for information must establish that "'(1) 'the owner ... has taken reasonable measures to keep such information secret' and (2) 'the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.'" *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540 (7th Cir. 2021) (quoting 765 Ill. Comp. Stat. § 1065/2(d); other citation omitted). Whether information qualifies as a trade secret is a question of fact that "requires an ad hoc evaluation of all the surrounding circumstances." *Id.* (citing *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003)). Because the facts drive the trade secret analysis, a company's customer list does not automatically receive trade secret protection. *See, e.g., Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 405 (7th Cir. 2005).

**\*4** In its motion to quash, Shewin asserts in a conclusory manner that its customer information is entitled to trade secret protection. *See* Mot. to Quash 2–3. It does not explain what,

if any, steps it took to maintain the secrecy of its customer information, and it does not explain why its customer information derives independent economic value from not being generally known. *See id.* For example, there is no indication that Shewin took any steps to prevent Amazon from disclosing its customer information, such as including a confidentiality clause in its contract with Amazon. *See id.* Shewin's "Mere assertions [of trade secret protection] unsupported by specific contentions are not enough" to carry its burden to show that it has standing to move to quash this third-party subpoena.[1] *Soto*, 2016 WL 11953040, at *3 (quoting *JAK Prods., Inc. v. Bayer*, 2015 WL 2452986, at *7 (N.D. Ill. May 22, 2015)). Because Shewin has not carried its burden to show that it has third-party standing, the court does not reach its argument that the subpoena exceeds the scope of discovery authorized by the preliminary injunction.

### III. Personal Jurisdiction

The parties agree that Shewin is domiciled in China. SAC ¶ 19; Mem. Supp. MTD 8. They disagree about whether, as Unicolors contends, the SAC and the evidence Unicolors submitted in support of its motion for preliminary injunction together make out a *prima facie* case of personal jurisdiction. Mem. Opp'n MTD 1–3.

### A. Personal Jurisdiction Principles

Federal Rule of Civil Procedure 4(k) specifies the conditions under which serving a summons or filing a waiver of service of process establishes personal jurisdiction in a federal district court. Rule 4(k)(1) sets out the general rule that service in accordance with Rule 4 "establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A) (internal numbering omitted). Rule 4(k)(1)(C) covers a situation in which a federal statute authorizes nationwide service of process, permitting the court to exercise personal jurisdiction "when authorized by a federal statute." And Rule 4(k)(2) governs when a federal claim falls outside state court jurisdiction. Rule 4(k)(2) permits the court to exercise personal jurisdiction if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). The primary difference is that Rule 4(k)(1) "pulls in state law limits on personal jurisdiction," such as the state's long arm statute, while Rule 4(k)(2) does not import those

**Unicolors, Inc. v. Shewin Flagship Shops, Not Reported in Fed. Supp. (2024)**

2024 WL 4567268

limits. *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 726 (7th Cir. 2024) (citing *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 402 (6th Cir. 2021)); *see also Myer ex rel. B.D. v. Samsung SDI Co., Ltd.*, 91 F.4th 856, 860 (7th Cir. 2024).

Unicolors' claims arise under the Copyright Act, a federal statute. SAC ¶¶ 47–59. The Copyright Act does not authorize nationwide service of process, so Rule 4(k)(1)(C) does not apply. *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997). Whether Rule 4(k)(1)(A) or 4(k)(2) applies depends on whether Shewin is subject to jurisdiction in the court of any other state. If the defendants in a federal question case such as this one are subject to general jurisdiction in the courts of another state, then the case "may proceed only if [the defendants] also are subject to the jurisdiction of the State of Illinois." *Id.* at 1202. On the other hand, Rule 4(k)(2) governs if the defendants are not subject to personal jurisdiction in any other state. *See id.* at 1201–02.

**\*5** Unicolors does not dispute that Shewin is domiciled in China, and it does not argue that Shewin is subject to personal jurisdiction in the courts of a state other than Illinois. *Cf. Janmark*, 133 F.3d at 1201–02. Rule 4(k)(2) therefore applies, and the court analyzes whether exercising personal jurisdiction over Shewin comports with the Constitution and laws of the United States.[2]

In its Fourteenth Amendment jurisprudence, the Supreme Court has recognized "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citing *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Unicolors does not argue that this court has general jurisdiction over Shewin, so the court confines its analysis to specific, case-linked jurisdiction. *See Myer ex rel. B.D. v. Samsung SDI Co., Ltd.*, 91 F.4th 856, 860–61 (7th Cir. 2024) (*per curiam*).

"For specific personal jurisdiction, there must be: (1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.* at 861 (citing *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021); other citation omitted). "Requiring minimum

contacts protects the defendant from the burden of litigating in a distant, inconvenient forum, as well as to prevent states from reaching beyond the limits of their sovereignty." *Id.* (citing *Int'l Shoe Co. v. Wash. Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

### B. The Complaint

As on a Rule 12(b)(6) motion, the court must " 'accept as true all well-pleaded factual allegations [in the complaint] and draw all reasonable inferences in favor of the plaintiff'" when evaluating personal jurisdiction." *In re Sheehan*, 48 F.4th 513, 520 (7th Cir. 2022), cert. denied sub nom. *Sheehan v. Breccia Unlimited Co.*, 143 S. Ct. 1750 (2023) (citing *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)). However, when evaluating the complaint, "allegations in the form of legal conclusions are insufficient" and must be disregarded. *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) (citing *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (Rule 12(b)(6) standard)); *see also St. John's United Church*, 502 F.3d at 625 (applying the *Twombly-Iqbal* Rule 12(b)(6) standard when analyzing a Rule 12(b)(2) motion).

**\*6** Unicolors' second amended complaint contains no more than conclusory allegations that the requisites of specific personal jurisdiction are satisfied. *See* SAC ¶¶ 9–11, 21. Unicolors does not argue that the second amended complaint's conclusory allegations make out a *prima facie case* of specific personal jurisdiction, and the court agrees that they do not. *See* Mem. Opp'n MTD 1–2.

### C. Unicolors' Evidence

To make out its *prima facie* case, Unicolors relies on evidence it submitted at the temporary restraining order stage. It contends that this evidence shows Shewin "offered sales and shipment of" allegedly infringing products to Chicago. *Id.* at 2. Unicolors cites a series of screenshots showing someone shopping on Shewin's Amazon.com store. *See* ECF No. 28-2 Ex. B. The shopper places an allegedly infringing item in their digital shopping cart and sets the potential buyer's "deliver to" location to "Chicago 60604." *See id.*, PageID Nos. 635, 638, 641, 644, 647, 650, 653, 656, 659, 662, 665, 668, 670. The screenshots do not show that any purchase was made or that any product was shipped. *See id.* Nor does Unicolors contend in its briefing that it attempted to purchase any product from Shewin. *See id.*

Unicolors, Inc. v. Shewin Flagship Shops, Not Reported in Fed. Supp. (2024)

2024 WL 4567268

Unicolors argues that Shewin purposefully availed itself of the protection of Illinois law by listing allegedly infringing products on its website and conveying its willingness to ship those products to Illinois. Contrary to Unicolors' position, the sole case it cites does not hold that such a showing suffices to establish personal jurisdiction. In *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 577 (2023), the plaintiff filed a Lanham Act suit against an Amazon.com seller, alleging infringement of its sports-related trademarks. *See id.* at 617. The defendant, HANWJH, moved to dismiss for lack of personal jurisdiction. The record showed that HANWJH had the following contacts with Illinois: "On September 16, 2020, an investigator for NBA Properties accessed HANWJH's online Amazon store and purchased a pair of shorts. In placing the order, the investigator designated an address in Illinois as the delivery destination. The sale went through, and the product was delivered to the Illinois address on October 6, 2020." *Id.*

The Seventh Circuit held that these contacts established specific personal jurisdiction over the seller. *Id.* at 624–27. Throughout its analysis, the Seventh Circuit emphasized that HANWJH had shipped the allegedly infringing pair of shorts to Illinois, thereby reaching out to do business in and exploit the Illinois market. *See id.* For instance, the *NBA Properties* court explained why its analysis accorded with two prior decisions holding that personal jurisdiction over defendants who sold and shipped merchandise to people located in Illinois was proper, *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010), and *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385 (7th Cir. 2020):

> In *Curry*, the defendant's actions could be fairly "described as purposeful[ly]" directed where it "created an interactive website and explicitly provided that Illinois residents could purchase its products through that website," "arranged for the sale of its products through third-party websites," "sent written confirmation to the Illinois customers acknowledging their sale and including their Illinois shipping address," and then, "shipped [the product] to its customers who were in Illinois."

**\*7** We see the same purposeful direction here. HANWJH's actions certainly can be characterized as purposeful. It established an online store, using a third-party retailer, Amazon.com. Through this online store, it unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so. When an order was placed, it filled the order, intentionally shipping

an infringing product to the customer's designated Illinois address.

*NBA Props.*, 46 F.4th at 624 (brackets in the original) (citation omitted). The *NBA Properties* court also rejected "a categorical rule that multiple online sales, as opposed to a single online sale, are required to establish a sufficient basis for personal jurisdiction." *Id.* at 625 (citing *Matlin v. Spin Master Corp.*, 921 F.3d 701 (7th Cir. 2019)).

The facts of *NBA Properties* share a feature common to many of the Seventh Circuit cases the parties cite holding that personal jurisdiction existed over an out-of-state online seller. In nearly every such case, the seller filled an order and shipped goods to an in-state buyer. *See NBA Props.*, 46 F.4th at 617; *Curry*, 949 F.3d at 399; *Hemi*, 622 F.3d at 756; *but see Matlin*, 921 F.3d at 707 (finding no personal jurisdiction, despite evidence that the defendant shipped one allegedly infringing product to Illinois).[3]

The only arguable exception is *uBID, Inc. v. GoDaddy Grp. Inc.*, 623 F.3d 421 (7th Cir. 2010), a case about cybersquatting on internet domain names. The plaintiff, uBid, sued GoDaddy, a seller of internet domain names based in Arizona, in this judicial district. Rather than selling physical goods to Illinois residents, GoDaddy sold virtual assets, domain names, to Illinois residents. *See id.* at 423. GoDaddy also mounted an extensive nationwide advertising campaign, taking steps such as buying time during Super Bowl broadcasts. *See id.* at 424. Applying *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), the Seventh Circuit held that the defendant's "extensive marketing in Illinois and sales to Illinois customers, including two who allegedly cyber-squatted on domain names similar to [the plaintiff's]'s" satisfied the minimum contacts test. *Id.* at 427–28. As in the cases cited in the prior paragraph, GoDaddy's contacts with Illinois included claim-related sales of digital assets (rather than physical goods) to Illinois residents.

Unicolors cites no case finding personal jurisdiction in the absence of at least one claim-related, completed sale to an Illinois resident. That does not mean that a sale to a buyer in the forum state is invariably necessary or sufficient to create specific personal jurisdiction. Adopting "[s]uch a categorical rule would be unsound, and such a practice has been discouraged by the Supreme Court." *NBA Props.*, 46 F.4th at 624 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485–86 (1985); other citation omitted). For instance, a federal district court sitting in Wisconsin recently held that a defendant who shipped an allegedly infringing product

**Unicolors, Inc. v. Shewin Flagship Shops, Not Reported in Fed. Supp. (2024)**

2024 WL 4567268

to another state nevertheless purposely availed itself of the protections of Wisconsin law because the order was placed by a customer with a "bill to" address in Wisconsin. *Quincy Bioscience, LLC v. BRYK Enters., LLC*, 2023 WL 2933464, at *2–3 (W.D. Wis. Apr. 13, 2023). "If the defendant makes sales to a customer that it knows is a resident of the forum state," the court reasoned, "it follows that the defendant can reasonably expect to be sued in that state on a claim that arises of out (sic) the sale of the product." *Id.* at *3.

 **\*8** That analysis, as well as the reasoning of cases such as *NBA Properties*, does not apply in the instant case because Unicolors provides no evidence and does not allege that Shewin has shipped or offered to ship allegedly infringing products to a person associated with an Illinois address. Unicolors also does not allege that Shewin has marketed its products to Illinois buyers or otherwise attempted to exploit the Illinois market, other than by creating an Amazon.com store. The facts presented in this record therefore differ materially from *uBid*—no marketing campaign targeting, nor purchases made by, Illinois residents. *Compare be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011).

Unicolors has also failed to provide any evidence or allegations shedding light on what steps Shewin took to create its Amazon.com store. That distinguishes *Monster Energy Co. v. Wensheng*, 136 F.Supp.3d 897 (N.D. Ill. 2015). The *Monster Energy* court held that it had personal jurisdiction in a trademark infringement suit over online counterfeiters who offered allegedly infringing goods for sale on their AliExpress stores. The *Monster Energy* plaintiff submitted declarations and other evidence showing that creating an online store on AliExpress required the defendants to "affirmatively select a shipping template to ship their products, including counterfeit Monster Energy Products, to the United States and Illinois." *Id.* at 902. By contrast, this record is bereft of evidence on whether Shewin made any affirmative selections targeting the Illinois market when it created its Amazon.com store.

The record also does not explain the significance of the "deliver to" address being set on Unicolors' screenshots to a Chicago postal code. Does the "deliver to" location signify that Shewin stands ready to ship to Illinois, or does it show only that the buyer is contemplating placing an order and requesting that it be shipped to an Illinois address without knowing whether the seller will agree? If it is the latter, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis

for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (citation omitted).

The Seventh Circuit has repeatedly warned that "premising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country." *Hemi*, 622 F.3d at 760 (quoting *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004)); *accord. Matlin*, 921 F.3d at 706 (citing additional cases). Accordingly, "[a] plaintiff cannot satisfy the [minimum contacts] standard simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010) (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)). This means that the plaintiff must do more than show that the defendant operates a website allowing customers from the forum state to place an order. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802–03 (7th Cir. 2014). As explained by the Seventh Circuit a decade ago, "The interactivity of a website is ... a poor proxy for adequate in-state contacts.... Having an 'interactive website' (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible." *Id.* at 803.

 **\*9** Viewed in the light most favorable to Unicolors, the record establishes only that Shewin has created an interactive website on Amazon.com to sell its products and that a buyer may set the "deliver to" address to an Illinois postal code. Unicolors offers no limiting principle to guard against the concerns about nearly universal jurisdiction articulated repeatedly in Seventh Circuit case law on internet contacts. Accordingly, Unicolors has not carried its burden to make out a *prima facie* case of personal jurisdiction over Shewin. *See Matlin*, 921 F.3d at 706; *Advanced Tactical*, 751 F.3d at 803; *Mobile Anesthesiologists Chi.*, 623 F.3d at 446; *Hemi*, 622 F.3d at 760.

### D. Leave to Conduct Jurisdictional Discovery

In its response brief, Unicolors requests that it be allowed to conduct jurisdictional discovery if the court finds that it has not made out a *prima facie* case of personal jurisdiction. Seventh Circuit precedent dictates the answer to Unicolors'

**Unicolors, Inc. v. Shewin Flagship Shops, Not Reported in Fed. Supp. (2024)**

2024 WL 4567268

request: "A plaintiff must be able to establish 'a colorable or prima facie showing of personal jurisdiction before discovery should be permitted.' " *In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022), cert. denied sub nom. *Sheehan v. Breccia Unlimited Co.*, 143 S. Ct. 1750 (2023) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000)).

In addition, Shewin represents that it is a resident of China, and even where a *prima facie* case of personal jurisdiction has been made, "foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Id.* at 527 (brackets omitted) (quoting *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1026 (7th Cir. 2009)). Heeding this guidance, Unicolors' request for jurisdictional discovery must be, and is, denied because it has not made out a *prima facie* case of personal jurisdiction over Shewin. *See, e.g.*, *HS Wholesale Ltd. v. HS Glob. Distrib., LLC*, 2024 WL 774910, at *5 (N.D. Ill. Feb. 26, 2024).

***IV. Dissolution or Modification of Preliminary Injunction***
Shewin moves to dissolve or modify the preliminary injunction on three grounds. It argues first that it was not properly served with the minute order setting a deadline for it to request a hearing on the motion for preliminary injunction. *See* Mem. Supp. MTD 2–3. Next, Shewin maintains that Unicolors misled the court at the preliminary injunction stage by submitting images of its floral design patterns that differed materially from the images of its copyrighted designs on deposit with the Library of Congress. *See id.* at 10–18. Finally, Shewin contends that the scope of the preliminary injunction's asset freeze is overly broad and unduly burdensome. *See id.* at 8.

The court does not reach any of Shewin's arguments because for a "preliminary injunction to be valid," the district court that issues it must "have personal jurisdiction over the defendant." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citing *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 598 (7th Cir. 2007)); *accord. United States v. Kirschenbaum*, 156 F.3d 784, 795 (7th Cir. 1998). In *Advanced Tactical*, the Seventh Circuit held that the plaintiff failed to carry its burden to show that the district court had personal jurisdiction over the defendant. *Id.* at 802–03. The district court had issued a preliminary injunction enjoining the defendant from infringing the plaintiff's trademarks. The Seventh Circuit remanded the case to the district court with "instructions to vacate the preliminary [injunction] and dismiss the complaint for lack of personal jurisdiction." *Id.* at 804. The instant case stands in the same procedural posture. *Advanced Tactical* therefore teaches that the preliminary injunction must be vacated for want of personal jurisdiction, and Unicolors' second amended complaint must be dismissed for the same reason.

**V. Conclusion**

**\*10** For the reasons stated, defendant's motion to quash the subpoena dated September 24, 2024, is denied for want of a showing of third-party standing. Defendant's motion to dismiss the second amended complaint for lack of personal jurisdiction is granted. Because plaintiff has not shown that this court has personal jurisdiction, the preliminary injunction dated July 18, 2024, is dissolved.

In the preliminary injunction, this court found that plaintiff had made a showing of a threat of irreparable injury absent an asset freeze. Accordingly, this order dissolving the preliminary injunction is stayed for seven days to provide plaintiff with an opportunity to determine whether it wishes to appeal and, if so, to file a motion to stay this dissolution order pending appeal. Any motion for stay pending appeal is due on or before October 31, 2024. If a timely motion for stay pending appeal is not filed, the preliminary injunction will be dissolved effective November 1, 2024.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4567268

---

Footnotes

1    In its reply, Shewin briefly attempts to show that both elements of the trade secret test are satisfied. *See* Reply Supp. Mot. to Quash at 2–4, ECF No. 83. By waiting until its reply brief to attempt to develop an argument for trade secret protection, Shewin has waived its arguments. "[A]rguments raised for the first time in [a] reply brief are waived because

**Unicolors, Inc. v. Shewin Flagship Shops, Not Reported in Fed. Supp. (2024)**

2024 WL 4567268

they leave no chance to respond." *United States v. Williams,* 85 F.4th 844, 849 (7th Cir. 2023), *cert. denied,* 144 S. Ct. 1046 (2024) (quoting *White v. United States,* 8 F.4th 547, 552 (7th Cir. 2021)).

2    The personal jurisdiction analysis would be the same under Illinois law because Illinois' long arm statute extends personal jurisdiction to the limits of the Fourteenth Amendment's Due Process Clause. *See uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 425 (7th Cir. 2010); *GCIU-Employer Retirement Fund v. The Goldfarb Corp.,* 565 F.3d 1018, 1023 (7th Cir. 2009); *but see Matlin v. Spin Master Corp.,* 921 F.3d 701, 705 (7th Cir. 2019) (noting that the Illinois Constitution may provide "greater due process protections for nonresident defendants," but neither the Illinois Supreme Court nor the Illinois appellate court has identified any substantive differences (citations omitted)).

3    In the vast majority, if not all, of the many so-called "Schedule A" cases in this district, the plaintiff places one or more test purchases of allegedly infringing products, has them shipped to Illinois, and files evidence of the purchase and shipment. This case therefore differs markedly from the mine run of Schedule A cases in that Unicolors has provided no evidence or allegation of a test purchase or any other purchase of an allegedly infringing product by an Illinois resident.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.