**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANKER INNOVATIONS TECHNOLOGY CO., LTD; SHENZHEN OCEANWING SMART INNOVATIONS TECHNOLOGY CO., LTD.; ANKER INNOVATIONS LIMITED; and FANTASIA TRADING LLC;<br><br>Plaintiffs,<br><br>v.<br><br>BEIJING SEVEN TALENTS TECHNOLOGY CO., LTD.; AOSU LIFE PTE. LTD. (SINGAPORE); SHENZHEN ZHILING TECHNOLOGY CO., LTD.; GUANGZHOU CHAOYAN TECHNOLOGY CO., LTD.; and HONG KONG GLAZERO INTERNATIONAL TRADE CO., LIMITED;<br><br>Defendants. | Case No. 1:25-cv-15663<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION TO RECONSIDER ORDER PERMITTING JURISDICTIONAL DISCOVERY**

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................ 1

II. FACTUAL BACKGROUND ........................................................ 2

III. ARGUMENT ........................................................ 6

A. Defendants' Motion Is Not A Proper Use Of Reconsideration ........................................................ 6

B. Jurisdictional Discovery Should Not Be Stayed In This Case ........................................................ 7

1. The Three-Factor *Witz* Test Favors Not Staying Jurisdictional Discovery . 8

2. Anker Has Made A *Prima Facie* Showing Of Personal Jurisdiction Warranting Jurisdictional Discovery ........................................................ 10

3. Defendants' Self-Imposed Stay Of Jurisdictional Discovery Is Improper 15

IV. CONCLUSION ........................................................ 15

# TABLE OF AUTHORITIES

## CASES


*Akro Corp. v. Luker*,
45 F.3d 1541 (Fed. Cir. 1995) .......... 10

*BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*,
326 F.R.D. 171 (N.D. Ill. 2018) .......... 15

*Burritt v. Ditlefsen*,
807 F.3d 239 (7th Cir. 2015) .......... 6

*Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*,
90 F.3d 1264 (7th Cir. 1996) .......... 6

*CenturyLink Comm'ns, LLC v. Peerless Network, Inc.*,
No. 1:18-cv-3114, 2020 WL 11647731 (N.D. Ill. July 2, 2020) .......... 6

*In re Sheehan*,
48 F.4th 513 (7th Cir. 2022) .......... 10

*Keene Corp. v. Int'l Fidelity Ins. Co.*,
561 F. Supp. 656 (N.D.Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984) .......... 6

*Keeton v. Morningstar, Inc.*,
667 F.3d 877 (7th Cir. 2012) .......... 7

*Matlin v. Spin Master Corp.*,
921 F.3d 701 (7th Cir. 2019) .......... 14

*NBA Props., Inc. v. P'ships and Unincorporated Ass'n Identified in Schedule "A"*,
549 F. Supp. 3d 790, *aff'd*, 46 F.4th 614 (N. D. Ill. 2021) .......... 12

*Oto v. Metro. Life Ins. Co.*,
224 F.3d 601 (7th Cir. 2000) .......... 6

*Royal Canin USA, Inc. v. Wullschleger*,
604 U.S. 22 (2025) .......... 14

*Shenzhen Sunwell Industrial Co. v. P'ships and Unincorporated Ass'ns Identified on Schedule A,* No. 1:25-cv-01949, Dkt. No. 55 (N.D. Ill. 2025) .......... 14

*Tamburo v. Dworkin*,
No. 04 C 3317, 2010 WL 4867346 (N.D. Ill. Nov. 17, 2010) .......... 9

*Ticketreserve, Inc. v. viagogo, Inc.*,
656 F. Supp. 2d 775 (N.D. Ill. 2009) ........................................................................ 7

*Touchcom, Inc. v. Bereskin & Parr*,
574 F.3d 1403 (Fed. Cir. 2009) ............................................................................. 15

*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*,
395 F.3d 1275 (Fed. Cir. 2005) ............................................................................. 10

*Virginia v. Black*,
538 U.S. 343 (2004)..........................................................................................11

*Witz v. Great Lakes Educ. Loan Servs., Inc.*,
No. 19-cv-06715, 2020 WL 8254382 (N.D. Ill. July 30, 2020)................. 1, 7, 8, 9, 10, 13

**FEDERAL RULES**

Fed. R. Civ. P. 4(k)(2) ........................................................................................ 15

**OTHER AUTHORITIES**

Black's Law Dictionary (12th ed. 2024).........................................................................10, 11

## I. INTRODUCTION

Defendants' Renewed Motion to Reconsider is procedurally improper and substantively baseless. Rather, it is an attempt to shut off appropriate, yet damning, personal jurisdiction discovery and to prejudge Defendants' Motion to Dismiss without appropriate consideration of the evidence that Defendants seek to hide and suppress. Plaintiffs (collectively, "Anker") have shown colorable or *prima facie* evidence of personal jurisdiction that justifies taking jurisdictional discovery and, therefore, denial of Defendants' Renewed Motion to Reconsider.

Under Seventh Circuit law, motions to reconsider are rarely granted and limited to narrow, specific circumstances, none of which are present here. Defendants had a full and fair opportunity to argue the scope of the Court's stay of discovery – it was squarely raised before the Court in the Joint Status Report and then decided during the Initial Status Conference at which Defendants' counsel appeared. Defendants do not raise any manifest errors of law or fact, newly discovered evidence, or change in the controlling law that would justify reconsideration. Seventh Circuit precedent therefore dictates that the Court should deny the Renewed Motion.

If the Court does consider the merits, it will find that even Defendants' primary case regarding a stay of jurisdictional discovery, *Witz v. Great Lakes Educ. Loan Servs., Inc.*, No. 19-cv-06715, 2020 WL 8254382 (N.D. Ill. July 30, 2020), would have this Court deny a stay. Under *Witz*, it is improper to stay discovery based on the arguments raised in a motion to dismiss, yet that is what Defendants seek to do here, including, as shown below, based on arguments that misstate the facts and the law. Indeed, Defendants' application of the *Witz* factors assumes the granting of their Renewed Motion to Dismiss, which is something *Witz* expressly prohibits. The time and the place for Defendants to raise their personal jurisdiction argument is after jurisdictional discovery takes place; they should not be allowed two bites at the same apple based on their arguments for dismissal.

Furthermore, Defendants' self-imposed stay of jurisdictional discovery ordered by the Court to proceed is improper and seeks to deny jurisdictional discovery to which Anker is entitled as a matter of law. Anker's First Amended Complaint sets forth more than a *prima facie* case for personal jurisdiction over the Defendants. Indeed, Defendants can suggest otherwise only by ignoring and mischaracterizing the allegations of the First Amended Complaint and the underlying evidence – which they had in hand when they filed their Renewed Motion to Reconsider. Instead, they expressly seek to have the Court prejudge their Renewed Motion to Dismiss in their favor, which even the cases they cite indicate is the wrong way to approach a stay of discovery. In short, the Renewed Motion to Dismiss should be denied and jurisdictional discovery should proceed.

## II. FACTUAL BACKGROUND

The First Amended Complaint identifies three theories under which the Court can exercise jurisdiction over the persons of Defendants: specific jurisdiction based on sales of accused products in Illinois, general jurisdiction based on Defendants doing substantial and continuous business in Illinois, and (failing either of those) jurisdiction under Rule 4(k)(2) based on contacts with the United States. Dkt. No. 47, ¶¶ 26-34.

First, Defendant Beijing Seven Talents Technology Co., Ltd. ("Beijing Seven Talents") filed a sworn specimen of use with the U.S. Patent and Trademark Office ("USPTO") on or about June 20, 2022 related to a wireless doorbell camera (Video Doorbell Pro V8P with HomeBase). *Id.*, ¶ 11. The specimen of use showed that both that product and another product were being promoted with Anker's HOMEBASE mark; that other product (Video Doorbell Ultra V8P with HomeBase) also clearly infringes one of the asserted patents (Dkt. No. 54-4, p. 13):



| | Video Doorbell Pro V8P | Video Doorbell Ultra V8S |
|---|---|---|
| HD Video and Two-Way Talk | 2K HD Video and Two-Way Talk | 5MP Ultra HD Video and Two-Way Talk |
| Field of View | 120° Horizontal, 90° Vertical | 120° Horizontal, 90° Vertical |
| Aspect Ratio | 4:3 | 4:3 |
| Power Options | Built-in Battery (120-Day Battery Life) | Built-in Battery (180-Day Battery Life) or Existing Doorbell Wiring (8-24V) |
| Advance Motion Detection with Motion Alerts | Passive Infrared & Human Body Detection with Motion Alerts | Radar & Passive Infrared & Human Body Detection with Motion Alerts |
| Video Storage Location | 8GB Micro SD, On Wi-Fi HomeBase | 8GB RAM, On Wi-Fi HomeBase |
| Direct Video Calling | Receive a direct-to-mobile video call from a doorbell press | Receive a direct-to-mobile video call from a doorbell press |
| Wi-Fi Connectivity | 802.11 b/g/n wifi connection @ 2.4 GHz | Enhanced Dual-Band WiFi 802.11 b/g/n/ac wifi connection @ 2.4 GHz & 5GHz |
| Doorbell Chime | 1. Free Wi-Fi doorbell chime. 2. Alexa Echo Device as a chime. | 1. Free Wi-Fi doorbell chime. 2. Alexa Echo Device as a chime. |
| Opearting Temperature | -4°F to 122°F (-20°C to 50°C), Water Resistant | -4°F to 122°F (-20°C to 50°C), Water Resistant |

Defendants do not contest that the specimen identifies two sales to Illinois customers of the Video Doorbell Pro V8P with HomeBase. Dkt. No. 54-4, p. 21, 22. Beijing Seven Talents took credit for those sales before the USPTO, Defendant Guangzhou Chaoyan Technology Co., Ltd. ("Guangzhou Chaoyan") took credit for those sales before a Federal court in Washington, and Defendant Shenzhen Zhiling Technology Co., Ltd. ("Shenzhen Zhiling") also took credit for the sales in Chinese court. Dkt. No. 54-4, p. 7-8; Ex. A, ¶ 3; Dkt. No. 47, ¶¶ 20, 22, 27, 30. Defendants did not argue that personal jurisdiction would be improper based on their sales of those products using Anker's HOMEBASE trademark. *See* Dkt. No. 54-1. But in the Renewed Motion to Dismiss, none of the defendants will take responsibility for them even though Defendants have closely intertwined their business and each has held itself out to the public as "aosu," which, as shown below, is the name of all accused products sold in Illinois. *See* Dkt. No. 47, ¶¶ 9-24.

The First Amended Complaint identifies five specific sales of accused products, each sale including products accused of infringing each of the asserted patents and/or Anker's

HOMEBASE trademark; Defendants all seek to disclaim those sales despite each being an aosu product sold by an aosu authorized dealer. Dkt. No. 47, ¶¶ 28-32. On or about April 27, 2026, through "aosu authorized dealer" B&H Photo, one or more of Beijing Seven Talents, Shenzhen Zhiling, and Defendant AOSU Life Pte. Ltd. (Singapore) ("Aosu Life") sold an aosu Video Doorbell Pro and Wi-Fi HomeBase to an Illinois customer. *Id.*, ¶ 28. On or about April 27, 2026, through "aosu authorized dealer" Walmart.com, one or more of Beijing Seven Talents, Aosu Life, and Defendant Hong Kong Glazero International Trade Co., Limited ("HK Glazero") sold an aosu 3K Solar-Powered Security Camera System with HomeBase to an Illinois customer. *Id.*, ¶ 29. On or about April 27, 2026, through the Amazon.com "aosu Official Store," one or more of Beijing Seven Talents, Guangzhao Chaoyan, and Shenzhen Zhiling sold an aosu Solar Wall Light Cam Pro to an Illinois customer. *Id.*, ¶ 30. On or about April 27, 2026, through Staples.com, one or more of Beijing Seven Talents, Shenzhen Zhiling, Aosu Life, and HK Glazero sold an aosu Wireless Cam Max System with HomeBase to an Illinois customer. *Id.*, ¶ 31. On April 30, 2026, one or more of Beijing Seven Talents, Shenzhen Zhiling, Aosu Life, and HK Glazero sold an aosu Video Doorbell Ultra and WiFi HomeBase at a Menards location in Chicago, Illinois. *Id.*, ¶ 32. That Video Doorbell Ultra and WiFi HomeBase are still available for sale at Menards locations throughout Illinois, even today. Ex. B. Thus, these sales are all detailed in the First Amended Complaint, yet Defendants refuse to agree that any of them made any of the sales. Dkt. No. 54-1. Moreover, Anker voluntarily supplied the sales receipts, order confirmations, shipment confirmations, delivery labels, and payment evidence ("the documentary evidence") to Defendants' counsel ***before*** the filing of Defendants' Renewed Motion to Reconsider. Ex. C.

The First Amended Complaint also identifies numerous other contacts that Defendants have with one another, with Illinois, and with the United States. These include Beijing Seven

Talents claiming responsibility for the Aosu app that Aosu Life claims for itself and which requires compliance with Aosu Life's policies in order for purchasers, including purchasers in Illinois, to use accused products. Dkt. No. 47, ¶¶ 13, 15. Beijing Seven Talents also claims that it owns the copyright on HK Glazero's website. *Id.*, ¶ 13. Shenzhen Zhiling obtained FCC authorization to import several accused products and has appeared at the Consumer Electronics Show (CES), the world's largest consumer electronics and technology trade show, in Las Vegas holding itself out as "aosu." *Id.*, ¶¶ 18-19. The Motion to Reconsider does not mention those contacts or how intertwined Defendants' businesses are.

Defendants cannot dispute that these sales and contacts are genuine and properly pled. Further, Anker voluntarily provided to Defendants' counsel the documentary evidence proving these sales and contacts alleged in the First Amended Complaint prior to Defendants' filing the Renewed Motion to Reconsider. Ex. C.

This Court's decision at the Initial Status Hearing on February 24, 2026 required personal jurisdiction discovery to proceed. Dkt. No. 24. The next day, Anker served jurisdictional interrogatories and document requests on Defendants. Exs. D, E. Instead of responding to them substantively, Defendants filed their original Motion to Reconsider the Court's discovery decision (Dkt. No. 33) and self-imposed a stay of jurisdictional discovery based on their filed Motion to Reconsider. Defendants then served discovery responses stating that they would not provide substantive responses to the jurisdictional discovery based on their pending Motion to Reconsider. Exs. F, G. This refusal continued for five months despite there being no stay of jurisdictional discovery entered by the Court and the Court's original decision permitting jurisdictional discovery remaining in full force.

## III. ARGUMENT

### A. Defendants' Motion Is Not A Proper Use Of Reconsideration

As a case cited in Defendants' motion makes clear, "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (quoting *Keene Corp. v. Int'l Fidelity Ins.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984)). They are rarely granted and are not intended to second-guess a court's exercise of its discretion, especially when all of the facts and evidence were available to a party before the court's initial decision was made. *CenturyLink Comm'ns, LLC v. Peerless Network, Inc.*, No. 1:18-cv-3114, 2020 WL 11647731, *1 (N.D. Ill. July 2, 2020) (Coleman, J.). That is, "reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale*, 90 F.3d at 1270. Here, Defendants do not argue that any of the Seventh Circuit's reasons for reconsideration are present: they do not assert that the Court made a manifest error of law or fact or that there was any evidence relating to their sales in Illinois that they did not already have. Defendants do not cite any cases that were decided since the Court's original decision. Instead, Defendants are seeking a re-do of their previous arguments and a second try to convince the Court based exclusively on information and evidence available to Defendants before the Court made its original discovery decision. That is not a proper use of reconsideration and Defendants' motion should be denied.

There is no question that the Court's jurisdictional discovery decision is not a manifest error of law. "A 'manifest error' occurs when the district court commits a 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (quoting *Oto v. Metro. Life Ins.*, 224 F.3d 601, 606 (7th Cir. 2000)).

Defendants identify no such error, nor could they. The question of whether to permit discovery to proceed or stay is committed to the Court's case management discretion; district courts have "considerable discretion to manage their dockets," including controlling discovery. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012); *see also Ticketreserve, Inc. v. viagogo, Inc.*, 656 F.Supp.2d 775, 782 (N.D. Ill. 2009) ("It is within this Court's discretion to permit jurisdictional discovery."). This Court's reasonable exercise of discretion to permit jurisdictional discovery on its docket simply cannot constitute a manifest error of law.

Further, Defendants introduce no new evidence that would justify reconsideration. Defendants' motion is not supported by ***any*** evidence, only lawyer argument. Defendants seek to pre-argue their position on lack of personal jurisdiction rather than identify any factual basis for reconsideration. That failure is especially jarring because Anker provided significant documentary evidence to Defendants to show what Defendants already knew: that Defendants were knowingly selling or causing the sale of accused products in Illinois both before and after this case was filed, and even up to when Defendants filed their Renewed Motion to Reconsider. Ex. C. There is nothing in the First Amended Complaint that changes that, only evidence that Defendants have taken credit for sales when beneficial, but avoided it when harmful.

Defendants could have asked for briefing or argued the points they raise here at the Initial Status Conference. They did not. Reconsideration should not serve as a second bite at the apple.

**B. Jurisdictional Discovery Should Not Be Stayed In This Case**

Defendants' substantive arguments on jurisdictional discovery also improperly duplicate the arguments they raise in their Renewed Motion to Dismiss. First, the *Witz* case itself (on which Defendants primarily base their request for a stay) makes it clear it would be improper to enter a stay when the request would require the Court to prejudge the merits of a motion to dismiss. (Dkt. No. 56, pp. 8-10 (citing *Witz v. Great Lakes Educ. Loan Servs., Inc.*, No. 19-cv-

06715, 2020 WL 8254382, at *1 (N.D. Ill. July 30, 2020)). Moreover, the three-factors of the *Witz* test favor denying a stay. Second, Anker's First Amended Complaint establishes a *prima facie* case of personal jurisdiction and that Defendants have tried to hide who is responsible for each sale in Illinois, so Anker is entitled to jurisdictional discovery under the law. Third, Defendants' self-imposed stay of Court-ordered jurisdictional discovery was improper and should not be rewarded.

**1. <u>The Three-Factor *Witz* Test Favors Not Staying Jurisdictional Discovery</u>**

In *Witz*, the defendant moved to stay discovery until resolution of a fully briefed motion to dismiss. *Id.* at *1. Judge Kness applied a three-factor test: the very test that Defendants advocate for. *Id.*; *see also* Dkt. No. 56, pp. 8-10. While in that case, the court found that staying discovery generally would cause little harm (which would be quite different here, as discussed below), he found all remaining factors "weigh in favor of denying the motion to stay." *Witz*, 2020 WL 8254382, at *1. Specifically, a stay does not simplify even threshold jurisdictional issues because:

> a stay where a party asserts that dismissal is likely would require the court to make a preliminary finding of the likelihood of success on the motion to dismiss. ***This would circumvent the procedures for resolution of such a motion***. Any discussion of the arguments Defendant raises in support of its motion to dismiss is more appropriately dealt with in the Court's forthcoming order on that motion.

*Id.* (emphasis added; internal citations and quotations omitted). The *Witz* case involved just such a threshold jurisdictional issue – federal contractor immunity – but the court nonetheless indicated that a stay is inappropriate in even those circumstances. *Id.* at *2. Indeed, in the absence of a situation "where the complaint is utterly frivolous or was filed merely in order to conduct a fishing expedition or for settlement value," a discussion of the merits of a pending motion to dismiss would be inappropriate and the simplification "factor does not weigh in favor



9908472v2

of a stay of discovery." *Id.* (internal quotations omitted) (quoting *Tamburo v. Dworkin*, No. 04 C 3317, 2010 WL 4867346, at *2 (N.D. Ill. Nov. 17, 2010)).

The two other *Witz* factors (undue prejudice or tactical disadvantage to a party and reduction of the burden on the parties and Court) similarly are contrary to a stay.

It would be fundamentally unfair for Defendants to introduce evidentiary declarations into the record on their Renewed Motion to Dismiss, as they have (*see* Dkt. No. 54-2 (Pan Declaration), 54-3 (Liang Declaration)), but deny Anker the opportunity to investigate the underlying facts. Indeed, Defendants' Renewed Motion to Dismiss controverts the averments of the First Amended Complaint – even those that Defendants' counsel know to be true due to the evidence provided to them by Anker's counsel (*see* Ex. C) – so it would be improper to prevent Anker from discovery to support its allegations. Indeed, Defendants try to hide their own sales by arguing that Anker improperly "seek[s] to attribute purchases from independent third-party retailers to various Defendants." Dkt. No. 54-1, pp. 14-15. However, Defendants have closely intertwined their businesses and each held themselves out to the public as "aosu" while trying to conceal which Defendant made each accused sale. *See* Dkt. No. 47, ¶¶ 9-24. Defendants have held that information closely, trying to avoid personal jurisdiction by tactically avoiding taking responsibility for sales through each commercial channel. So "a stay will unduly prejudice or tactically disadvantage the non-moving party." *Witz*, 2020 WL 8254382, at *1.

Defendants' argument on the final *Witz* factor, "whether a stay will reduce the burden of litigation on the parties and on the court," apparently arises out of their own intention to resist full and fair responses to jurisdictional discovery. *Compare id. with* Dkt. No. 56, p. 10. Defendants express a concern that jurisdictional discovery will "likely generate motions to compel, disputes over the attribution of third-party retail activity, and disagreements concerning

the scope of corporate-family discovery." (Dkt. No. 56, p. 10). But they have had almost five months to collect documents and prepare responses to the jurisdictional interrogatories; if they have used their time productively and prepared to respond to Anker's discovery requests as ordered by the Court, there should be no need to fight. Indeed, Defendants' only objection in their responses served on March 27, 2026 to the jurisdictional discovery served on February 25, 2026 was that "it is premature in light of Defendants' pending Motion to Reconsider the Court's Order permitting jurisdictional discovery" for Defendants' to respond. Exs. F, G. Certainly, a party should not be able to leverage its own planned recalcitrance to prevent the "burden" of fair discovery into the truth of factual assertions it made.

#### 2. Anker Has Made A *Prima Facie* Showing Of Personal <u>Jurisdiction Warranting Jurisdictional Discovery</u>

Defendants admit that the Court should order jurisdictional discovery to proceed if a plaintiff establishes "a colorable or prima facie showing of personal jurisdiction." Dkt. No. 56, p. 6 (citing *In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022)); *see also Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F. 3d 1275 (Fed. Cir. 2005).[1] Here, there is no question that the sales and other evidence cited in the First Amended Complaint constitutes colorable or *prima facie* evidence of personal jurisdiction. Instead, Defendants seek to rebut that evidence through incorrect factual and legal arguments. As *Witz* makes clear, those arguments are for another day, after jurisdictional discovery, when the Renewed Motion to Dismiss is taken up on the merits. *Witz*, 2020 WL 8254382, at *1.

"Colorable" evidence is evidence "appearing to be true, valid, or right." Black's Law Dictionary (12th ed. 2024). Similarly, "*prima facie* evidence" is "evidence that will establish a

[1] Personal jurisdiction over patent claims is governed by Federal Circuit law, not Seventh Circuit law, because the jurisdictional issue is "intimately involved with the substance of the patent laws." *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

fact or sustain a judgment unless contradictory evidence is produced." *Id.* (*see also Virginia v. Black*, 538 U.S. 343, 369 (2003) (Scalia, concurring in part) ("*Prima facie* evidence is evidence which on its first appearance is sufficient to raise a presumption of fact or establish the fact in question unless rebutted") (citation omitted)). That is, the required showing for discovery to go forward is whether the evidence presented on its face – before Defendants raise rebuttal arguments – is sufficient. Here, Anker has adduced clear evidence not only of Defendants' sales to Illinois customers that led to shipments to Illinois, but also nationwide sales that would support jurisdiction under Rule 4(k)(2). Defendants seek to rebut that evidence, previewing their arguments on the merits of their Motion to Dismiss, but that only goes to show that the required colorable or *prima facie* has been adduced.

First, as shown above, Defendant Beijing Seven Talents filed a trademark application with the U.S. Patent and Trademark Office that, in its specimen of use, showed that it was promoting the goods with Anker's HOMEBASE trademark, identifying the "Wi-Fi HomeBase" as being used for the very "video storage location" purposes in Anker's use and registered trademark.[2] Dkt. No. 54-4, p. 13. Remarkably, ***Defendants themselves*** attached that evidence of infringement to their Renewed Motion to Dismiss but ignored it for both that motion and this one. They cannot help but admit that accused sales were made (and the products shipped) to customers in East Peoria, Illinois and Cicero, Illinois. (Dkt. No. 54-4, pp. 21-22). Nor can they deny that both Beijing Seven Talents and Guangzhou Chaoyan have claimed responsibility ***under penalty of perjury*** for such Amazon sales. Dkt. No. 54-4, pp. 7-8; Ex. A, ¶ 3. Anker has

[2] At the time, Anker had been using the HOMEBASE trademark for several years but had not yet registered it. Therefore, it constitutes an infringement of Anker's rights under at least Count IV (unfair competition and false designation of origin under the Lanham Act) and Count V (violation of the Illinois Uniform Deceptive Trade Practices Act) of the First Amended Complaint. (Dkt. No. 47, ¶¶ 143-55).

also identified that Shenzhen Zhiling has asserted that it is responsible for such sales and Aosu Life is responsible for the app on which such devices run. Dkt. No. 47, ¶ 20. In this District, even a single sale has been found sufficient for the district court to exercise personal jurisdiction over an infringer. *See*, *e.g.*, *NBA Props., Inc. v. P'ships and Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 794 (N. D. Ill. 2021), *aff'd,* 46 F. 4th 614 (7th Cir. 2022). Accordingly, there is colorable or *prima facie* evidence of personal jurisdiction over Defendants based on the evidence Defendants themselves have authenticated and re-introduced into the record.[3] What is needed is discovery to attribute each of those sales to the correct Defendant(s) or to all Defendants through the use of the moniker aosu.

But there is plenty more evidence of personal jurisdiction that goes far beyond colorable or *prima facie* evidence. Defendants admitted that they were selling accused products throughout the United States and in Illinois before this lawsuit was filed, amounting to millions of dollars per month. Ex. 4, ¶ 13. They continued to do so and test purchases occurred through five different channels of trade before Anker filed the First Amended Complaint. These channels include Amazon.com, Walmart.com, Staples.com, B&H Photo, and Menards. Dkt No. 47, ¶¶ 28-32. Defendants' counsel expressed surprise, asserting that "Defendants ceased selling the products identified in the original Complaint shortly after this Illinois action was filed." Ex. H. But that is certainly not the case: as Anker's counsel pointed out to Defendants' counsel, Defendants are still selling products infringing both Anker's design patents and HOMEBASE trademark at over 300 Menards locations (many in Illinois) ***to this day***:

[3] Anker initially introduced the trademark specimen evidence in its Opposition to Defendants' Motion to Reconsider (Dkt. No. 37-2) and described it in careful detail, both in the Opposition, in other pleadings, and to Defendants' counsel in correspondence and oral discussions. Dkt. No. 37, pp. 2-3; Dkt. No. 37-2.




Ex. B. Thus, not only are there additional sales of the accused products sufficient to show specific personal jurisdiction, but they have also been continual enough to demonstrate that Defendants are at home in Illinois, doing business consistently throughout these proceedings.

Defendants raise a flawed legal argument in response to that *prima facie* showing: that sales after the original Complaint but before the First Amended Complaint are irrelevant to personal jurisdiction. As *Witz* suggests, that is an issue for consideration on the merits of the Renewed Motion to Dismiss, not as to whether discovery should proceed. *Witz*, 2020 WL 8254382, at *2. But Defendants' legal argument is also wrong under Supreme Court precedent:

> If a plaintiff amends her complaint, the new pleading "supersedes" the old one: The original pleading no longer performs any function in the case. . . . When a petition is amended, the cause proceeds on the amended petition. So changes in parties, or changes in claims, effectively remake the suit. And that includes its jurisdictional basis: The reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's jurisdiction.
>
> . . .
>
> In short, the rule in original cases that jurisdiction follows the amended (*i.e.*, now operative) pleading applies across the board.

*Royal Canin USA, Inc. v. Wullschleger*, 604 U.S. 22, 35-37 (2025).[4] Defendants do not contest that jurisdictional discovery would be proper if all of the test sales described in the First Amended Complaint are considered, they argue only that the Court should ignore them. Thus, Defendants have no argument against jurisdictional discovery once the timing argument is stripped away by the filing of the superseding First Amended Complaint. Jurisdictional discovery should proceed based on those sales as well.

Again, there is more. As the First Amended Complaint points out, there are numerous other contacts for each Defendant with Illinois and the United States. In addition to collaborating with Guangzhou Chaoyan for sales through Amazon.com, Beijing Seven Talents closely intertwines its businesses with other Defendants. Dkt. No. 47, ¶ 13. It holds itself out as offering the Aosu app, although Defendant Aosu Life is the developer and provider; claims copyright over Defendant (and subsidiary) Hong Kong Glazero's website; and directs activities of Defendant (and subsidiary) Shenzhen Zhiling, including manufacturing and representing itself as "aosu" to promote accused products at the Consumer Electronics Show. *Id.*, ¶ 19. Aosu Life claims it is the entity that provides "Aosu-branded products and related services including cameras, doorbells, and mobile applications" and requires compliance with its (that is, Aosu Life's) policies for purchasers, including purchasers in this District, to use such accused products. *Id.*, ¶ 15. Shenzhen Zhiling asserts that it manufactures accused products (including the "Video Doorbell (Wi-Fi HomeBase)" and "AOSU WirelessCam Max") and has agreed with the FCC to be subject to service and jurisdiction for those products in the United States. *Id.*, ¶ 18. In short, not only are the Defendants closely intertwined with one another, they have directed their

[4] The cases cited by Defendants (Dkt. No. 56, p. 14) – *Matlin v. Spin Master Corp.*, 921 F.3d 701 (7th Cir. 2019), and *Shenzhen Sunwell Indus. Co. v. P'ships and Unincorporated Ass'ns Identified on Schedule A*, No. 1:25-cv-01949, Dkt. No. 55 (N.D. Ill. Apr. 15, 2025) – are inapposite as neither *Matlin* nor *Sunwell* involved an amended complaint.

businesses at selling products in Illinois. Failing that, they are subject to jurisdiction in this Court under Rule 4(k)(2) because they have directed actions at the United States. Fed. R. Civ. P. 4(k)(2); *Touchcom, Inc. v. Bereskin & Parr*, 574 F. 3d 1403, 1415 (Fed. Cir. 2009).[5] Thus, it would be improper to deny Anker jurisdictional discovery because it has provided far more than enough to establish a *prima facie* case of personal jurisdiction.

### 3. Defendants' Self-Imposed Stay Of Jurisdictional Discovery Is Improper

Pursuant to the Court's Order that "discovery will proceed on the jurisdictional issues" (Dkt. No. 24), Anker served jurisdictional document requests and interrogatories on February 22, 2026. However, Defendants' responses served on March 27, 2026, objected to such discovery solely on the grounds that Defendants had filed a motion to reconsider the Court's Order. Defendants' self-imposed stay of discovery is improper and continues to delay progress in this lawsuit. *See BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 326 F.R.D. 171, 174–75 (N.D. Ill. 2018) (a motion pending regarding discovery that is long overdue does not stay Defendants' obligation to comply with the Order permitting that discovery and to provide such discovery). As the Court stated in *BankDirect*, "It was inappropriate, at best, for BankDirect to suspend discovery while filing and waiting for a ruling on a motion to stay." *Id.* at 175. Parties do not "own" a discovery schedule, and cannot suspend or extend discovery in accordance with their own desires. *Id.* at 174.

## IV. CONCLUSION

Based on the foregoing, Defendants' Renewed Motion to Reconsider should be denied and jurisdictional discovery should proceed.

---

[5] In their Renewed Motion to Dismiss, Defendants have not identified a district in which they can be sued. At best, they identified a "Washington action" that the claims against them could be tied to. Dkt. No. 54-1, p. 17-18. However, the Washington action has since been transferred to this District. Ex. I.

Respectfully submitted,

**LIPPES MATHIAS LLP**

Dated: August 18, 2026

*/s/ Joshua R. Rich*

Joshua R. Rich
jrich@lippes.com
332 S. Michigan Avenue, 9th Floor
Chicago, Illinois 60604
Telephone: (872) 254-5500

Celeste M. Butera (*pro hac vice*)
cbutera@lippes.com
445 Broadhollow Road, Suite 420
Melville, New York 11747
Telephone: (516) 820-1500

Tony V. Pezzano (*pro hac vice*)
tpezzano@lippes.com
Anna Antonova (*pro hac vice*)
aantonova@lippes.com
420 Lexington Avenue, Suite 2005
New York, New York 10170
Telephone: (332) 345-4500

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Joshua R. Rich, hereby certify on this date the foregoing Plaintiffs' Opposition to Defendants' Renewed Motion to Reconsider Order Permitting Jurisdictional Discovery has been served upon all counsel of record via electronic case filing.

*/s/ Joshua R. Rich*
Joshua R. Rich

Date: August 18, 2026